UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**VICTOR DIMAIO**,

          Plaintiff

v.

**DEMOCRATIC NATIONAL COMMITTEE**

        Defendants.

Case No. 8:08-cv-672-T-26-RAL-EAJ

Motion for Summary Judgment

**Dispositive Motion**

---

## DECLARATION OF PHILIP MCNAMARA
## IN SUPPORT OF DEFENDANT DEMOCRATIC NATIONAL COMMITTEE'S
## MOTION FOR SUMMARY JUDGMENT

1.      My name is Philip McNamara.  I serve as director of the Office of Party Affairs and Delegate Selection for defendant Democratic National Committee ("DNC").  I have held this position since April 2002 and have served as a staff member in said office since June 1998.

2.      I make this Declaration based on first-hand knowledge and in support of the Motion for Summary Judgment of Defendant DNC.

3.      The DNC is the governing body of the Democratic Party of the United States.  The DNC is composed of representatives elected from each state, including Florida, by that state's Democratic Party, plus representatives of a number of national Democratic organizations.

4.      The nominee of the Democratic Party for President of the United States is chosen by the delegates to the Democratic National Convention held during each

presidential election year. A vote of the majority of delegates to the Convention is required to nominate the Party's presidential candidate.

5.      The delegates to the Democratic National Convention are chosen through a process developed and implemented by each State Democratic Party. That process is required to comply with certain rules—the Delegate Selection Rules—adopted by the DNC.

6.      In my capacity as director of the DNC's Office of Party Affairs and Delegate Selection, I am responsible, among other things, for staffing the operation of the DNC's Rules and Bylaws Committee ("DNC RBC"). The DNC RBC is a standing committee composed of thirty (30) DNC members which is, among other things, responsible for overseeing the development, implementation and enforcement of the DNC Delegate Selection Rules.

7.      The DNC's rules for delegate selection developed over the course of the movement that began in the 1960s to reform the way the Democratic Party selects its nominees for President. The first set of rules resulted from the Mississippi Freedom Party credentials challenge led by Fannie Lou Hamer at the 1964 Democratic National Convention in Atlantic City. Beginning with the 1968 Democratic National Convention, the selection of delegates to each Convention has been governed by a set of principles or rules issued by the DNC. For each presidential election cycle since 1976, the DNC has issued "Delegate Selection Rules" to govern the selection, in each state, by each state Democratic Party, of the delegates to the National Convention.

8.      A true and correct copy of the Delegate Selection Rules for the 2008 Democratic National Convention ("2008 Delegate Selection Rules") is attached

2

hereto as Exhibit A.  The 2008 Democratic National Convention will be held in Denver, Colorado in August 2008.

9.      Under the Delegate Selection Rules, the DNC requires each State Democratic Party to develop a written plan for the selection of delegates to the national nominating Convention, and to submit that plan to the DNC RBC.   (2008 Delegate Selection Rules, Rule 1).  The Committee reviews each plan for compliance with the Delegate Selection Rules. (*Id.* Rules 1(D) & (E)).

10.      The Delegate Selection Rules address two basic aspects of delegate selection: (i) the allocation of delegate positions among presidential candidates, *i.e.*, how many delegates from each state will be pledged to each presidential candidate; and (ii) the selection of the actual individuals to fill those positions, the delegates and alternates who will attend the Convention.  A state party's written plan details how these two functions will be carried out in that particular state in accordance with the Delegate Selection Rules. One group of delegates is chosen by congressional district or other district level (Rule 8); another group is chosen at-large, *i.e.*, from the entire state (Rule 10).  The Rules also provide for selection of other categories of pledged delegates.  The Rules further provide for DNC members, the state's Democratic Members of Congress and, if any, Democratic Governor and certain other officials to attend the Convention automatically, by virtue of their positions, as "unpledged delegates," meaning delegates officially not pledged to any presidential candidate.  (Rules 9(A) & (B)).

11.      The allocation of delegate positions to presidential candidates is accomplished, by the State Democratic Party, either through a primary or a caucus/convention system.  In a primary system, the State Party uses the state

government-run or a party-run primary to allocate delegate positions, based on proportional representation, subject to a 15% threshold.  That is, each candidate who gets at least 15% of the vote is awarded a proportion of the delegates corresponding to the proportion of the vote that candidate wins. For example, if presidential candidate Smith wins 60% of the statewide primary vote and Jones wins 40%, Smith gets 60% of the state's at-large delegate positions and Jones gets 40%. The same method of allocation is used at the district level.  The actual selection of persons to fill these delegate positions can take place at a party-run meeting before the primary, a party-run meeting after the primary or as part of the primary itself.

12.     In a caucus system, the State Party uses a series of party-run meetings both to allocate delegate positions and to select persons to fill those positions. Typically caucuses begin with a series of meetings at the precinct level, open to all registered Democrats or, in states without party registration, persons declaring themselves Democrats, to meet to vote for President and elect delegates to higher-tier set of meetings, usually county or congressional district level caucuses.  At each set of meetings, the proportion of the vote won by each presidential candidate determines how many delegate positions that candidate gets at the next tier, or set of meetings.  A caucus of supporters of that candidate meets during that same session to determine which persons will fill those positions and attend the next tier as "delegates" to that tier.  For example, precinct caucuses may be held to elect delegates to congressional district caucuses, which will in turn elect delegates to a state convention.   The proportion of delegate positions allocated to each presidential candidate can be based on the vote of

4

caucus participants at any level of this process.  Caucus/convention systems do not involve use of any electoral machinery of the state government in any way.

13.     Attached hereto as Exhibit B is a list of the states indicating which type of system has been or will be used by each State Party in 2008, and the date of each State Party's first event, primary or first-tier caucus.  "C" or "CC" indicates use of a caucus/convention system; "P," use of a state-run primary; and "PP" use of a State Party-run primary system, that is, a primary-type system that is paid for and run by the state party, and that does not use the state's electoral machinery.  As Exhibit B indicates, of the 56 states and territories that will send delegates to the 2008 Convention, twenty (20) will use caucus or party-run primary systems not involving any use of their states' electoral machinery.

14.     The Delegate Selection Rules govern all aspects of the delegate selection process and reflect the values and ideals of the Democratic Party of the United States in a variety of ways.  For example, the primary or first-tier caucus must be open to all Democrats (Rule 2(A)); all stages of the process must be open and transparent (Rule 2(F)); and discrimination based on race, sex, age, color, creed, national origin, religion, ethnic identity, sexual orientation, economic status or physical disability is strictly prohibited at all stages of the delegate selection process. (Rule 4(B); Rule 5).  State Party plans must include affirmative action programs to ensure full participation in the selection of the actual persons to attend the Convention as delegates, including specific numerical goals for African Americans, Hispanics, Asian Pacific Islander Americans and Native Americans.  (Rule 6(A)).  Each state's delegation must be equally divided between men and women. (Rule 6(C)).

15.     One of the key elements of delegate selection addressed by the Delegate Selection Rules is the timing of a state's first determining step, *i.e.*, the date of the primary or the date of the first-tier caucus in which all Democrats may participate to express their individual preferences for president.  Over the course of the last 39 years, since 1969, a series of different party commissions and bodies have studied the complex question of when states should first be able to hold such events during the election cycle and which states, if any, should be allowed to hold events before all the other states.  The recommendations of these commissions, the views of the respective DNC bodies charged with implementing the delegate selection rules for a particular cycle, and of the DNC membership as a whole, have been reflected in the timing provisions of the Delegate Selection Rules, as adopted by the DNC, for each cycle.

16.     These deliberations have involved delicate balancing, for example, of the value of showcasing smaller less populous states where more personal "grassroots" campaigning is still possible; the competing value of giving a role to larger, more racially, ethnically and economically diverse states reflective of the Party's constituency; the value of giving Democratic voters a longer chance to examine and scrutinize the candidates, by stretching out the process; and the competing value of rallying around a nominee earlier in the process and thereby conserving resources for the general election against the Republican nominee.

17.     In 1992, 1996 and 2000, the Delegate Selection Rules provided that all State Democratic Parties were to hold their primaries or first-tier caucuses on the first Tuesday in March or later, with an exception in the rules for the Iowa caucuses and New Hampshire primary to be held prior to the first Tuesday of March.

18.     Prior to 1996, the national Republican Party had no rules addressing the timing of presidential primaries and caucuses. At their 1996 Convention in San Diego, the Republican National Convention adopted the Republican Party's first rule governing when state Republican State Parties could hold their binding primaries and first-tier caucuses. Under that rule, in place and first utilized for the 2000 cycle, State Republican Parties could hold such events any time on or after the first Tuesday in February. In response to this February date, Republican parties in Arizona, Delaware, Michigan, South Carolina and Washington State scheduled state government-run primaries or Republican-run events in February. The DNC maintained the first Tuesday in March as the first date on which state Democratic Parties could hold such events. As a result, in five (5) states Republican events were held during February with no corresponding Democratic event. The five (5) state Democratic parties were forced to hold separate Democratic only contests, on or after the first Tuesday in March, to allocate delegates.

19.     In adopting the 2004 Delegate Selection Rules, the DNC moved the beginning of the Democratic Party "window" to the same date as the Republicans: the first Tuesday in February—with exceptions for Iowa (15 days earlier) and New Hampshire (7 days earlier). In 2004, the Iowa caucuses were held on January 19; the New Hampshire primary was held on January 27; and the regular "window" during which all other states could hold their events opened on February 3. States holding events on that date (February 3, 2004) included Arizona, Arkansas, Delaware, Missouri, and Oklahoma (state government-run primaries), and South Carolina, New Mexico and North Dakota (caucuses or party-run primaries).

20.      During the 2004 nominating cycle, the Michigan Democratic Party threatened to submit a delegate selection plan placing Michigan's party-run primary on the same day as New Hampshire's.  As a compromise, it was agreed that in 2004, Michigan's event would be held within the window (after February 3, 2004), but that a commission would be formed to study and make recommendations with respect to the calendar for 2008.  Accordingly, then-DNC Chairman Terence R. McAuliffe proposed, and the 2004 Democratic National Convention adopted, on July 25, 2004, a resolution creating a "Commission on Presidential Nomination Timing and Scheduling," charged with the responsibility of "studying the timing of presidential primaries and caucuses and developing appropriate recommendations to the Democratic National Committee for the nominating process beginning in 2008."

21.      The Commission was co-chaired by U.S. Representative David Price (D-NC) and former U.S. Secretary of Labor Alexis M. Herman.   Members of the 40-person Commission, which became known as the "Price-Herman Commission" included U.S. Representative Kendrick Meek (D-FL).  The Commission held five meetings over the course of ten months and heard testimony from a number of experts and a variety of state party officials, party leaders, elected officials, national organizations and academics.  Numerous timing scenarios were developed and debated extensively by Commission members.

22.      The Price-Herman Commission adopted its final report on December 10, 2005.  A copy of that Final Report, *Report of the Commission on Presidential Nomination Timing and Scheduling to Governor Howard Dean,* is attached as Exhibit B to the Complaint in this case.

23.     The Commission concluded that, while its members "understand and appreciate the valuable role the Iowa caucuses and New Hampshire primary have played in the Democratic nominating process," a "majority of Commission members expressed serious concerns that Iowa and New Hampshire are not fully reflective of the Democratic electorate or the national electorate generally—and therefore do not place Democratic candidates before a representative range of voters in the critical early weeks of the process." (*Report of the Commission on Presidential Nomination Timing and Scheduling,* p. 39).

24.     In the end, the report explains, the Commission "favored an approach that would preserve the first in the nation status of Iowa and New Hampshire but address the diversity, representation and participation issues in a meaningful way by including other states in the pre-window period in a schedule in which they would play an important role alongside Iowa and New Hampshire." (*Id.* at p. 41).  Specifically, the Commission recommended that there be one or two first-tier caucuses between the Iowa caucus and the New Hampshire primary; and that following the New Hampshire primary, and prior to the opening of the regular window on February 5, 2008, there be one or two presidential preference primaries.

25.     The Commission also recognized that effective implementation of the Party's rule on timing required the support of the party's presidential candidates. The Commission urged "the RBC to impose appropriate obligations on presidential candidates to support, cooperate with and otherwise participate in making the timing system successful in achieving its fundamental goals." (*Id.* at 44).

26.     There followed a lengthy and deliberative process by the DNC RBC to implement the Price-Herman Commission recommendations and determine which states should hold such events.  Beginning in March 2006, state Democratic parties were invited to apply to be the ones to hold their events "pre-window," *i.e.*, to hold primaries or caucuses before February 5, 2008, the first date on which all other states would be permitted to hold such events.

27.     In total, eleven state Democratic parties submitted extensive written presentations and testified at length before the RBC at a series of meetings. In evaluating the states that applied, the RBC was guided by the Commission's recommendation that racial and ethnic diversity; geographic diversity; and economic diversity, including union density, be highlighted in the selection of the new pre-window states.

28.     The state of Florida did not apply at any time to be one of the states that would be allowed to hold its first determining step – its primary – prior to February 5, 2008.

29.     At the end of that process of considering states for early events, the DNC RBC recommended to the full DNC that the Iowa caucuses take place no earlier than January 14, 2008; that one caucus be held between the Iowa caucus and the New Hampshire primary, and that the caucus be held in Nevada, a state with a significant and growing Latino population, a sizeable Asian American and Pacific Islander community, a strong organized labor presence, and in the western region of the country where the Democratic Party was making electoral gains.  The RBC further recommended that one primary be held between the New Hampshire primary and the opening of the window on

10

February 5, and that that primary be held in South Carolina, a southern state in which African-Americans represent a significant share of the Democratic electorate.

30.     The proposed Delegate Selection Rules for 2008, including the calendar described in paragraph 29, were adopted by the full DNC at a meeting of the DNC held on August 19, 2006 in Chicago, Illinois.  At no time prior to or during the meeting were any objections to the proposed Rules communicated, privately or publicly, by any representative of the Florida Democratic Party.  A vote on the Rules at the full DNC meeting was taken by voice vote.  As best the DNC staff could determine and as the press reported only members of the New Hampshire delegation voted against the proposed Rules.  No member of the Florida delegation spoke against the proposed Rules.

31.     The 2008 Delegate Selection Rules, as adopted in August 2006, also contain provisions for enforcing those Rules.  Rule 20(C) imposes certain automatic sanctions on any State Party which submits a delegate selection plan violating the timing, proportional representation or threshold provisions of the Rules.  These sanctions were first included in the 2004 Delegate Selection Rules approved by the DNC in 2002.

32.     Rules 20(C)(1)-(3)  provide that any state submitting a plan violating any of these three rules (timing, proportional representation or threshold) will automatically lose 50% of the state's pledged delegate positions and that the DNC members, members of the Congressional delegation and other unpledged delegates will not be able to attend the Convention as voting delegates.  In addition, Rules 20(C)(5)&(6) confer on the DNC RBC the authority to impose additional sanctions, including further reduction of the state party's delegation to the Convention.

33.     As part of the 2008 Delegate Selection Rules, the DNC RBC recommended, and the full DNC adopted, a new rule imposing obligations on presidential candidates with respect to the calendar. This new rule, Rule 20(C)(1)(b), provides that a presidential candidate who campaigns in a state that violates the window will not be entitled to receive any pledged delegate positions from that state.

34.     Similarly, the Rules of the Republican National Committee (RNC) impose automatic sanctions on state Republican Parties that submit plans violating the RNC Rules.  RNC Rule 16(a)(1)  provides that if any state or state party violates the Rules of the Republican Party relating to the timing of the delegate selection process, and the state sets that date before the Call to the Republican Convention is issued, the state party's delegation to the Republican National Convention is to be automatically reduced by 50%.  If the state sets the date after the Call is issued, the automatic reduction is 90%. (RNC Rule 16(a)(2)).  The relevant portions of the RNC rules are attached hereto as Exhibit C.

35.     In the case in which a state government-run primary is scheduled for a date that violates the DNC's rules, the affected State Party may easily avoid any of these sanctions simply by using a Party-run process to allocate delegate positions and by scheduling that process for a date that complies with the Rules.  For example, in 1984, the state of Vermont enacted a law scheduling its primary for March 6, earlier than the earliest date permitted by the 1984 rules, which was March 11.  The State Party used a Party-run process to allocate and select delegates, thereby turning the primary into a non-binding beauty contest.

36.     In 1988, the Republican-controlled Legislature of South Dakota enacted a law to hold the state's presidential primary on February 23, 1988, earlier than the earliest date then permitted under the 1988 Rules. The South Dakota State Party ultimately agreed to treat the primary as a non-binding beauty contest and to hold a separate binding caucus on March 12, which was after March 8, the first date on which states other than Iowa and New Hampshire were permitted to hold binding primaries and first-tier caucuses in 1988.

37.     For the 2000 nominating cycle, the state governments of Arizona, Delaware and Washington enacted legislation establishing presidential preference primaries in February 2000. Specifically, the Republican-controlled legislature and Republican governor in Arizona scheduled its primary February 22, 2000; the Republican-controlled Delaware legislature scheduled its primary for February 8, 2000; and Washington State scheduled its primary for February 29, 2000. Again these February primary dates complied with the opening of the Republican window for the 2000 cycle, but not with the DNC Rules.  The Arizona, Delaware and Washington State Democratic Parties all petitioned the DNC RBC for permission to hold their events in February before the March 7, 2000 opening of the Democratic window. The three state Democratic parties argued that since their state governments were financing and administering presidential primaries that they should be able to take advantage of those contests rather than being forced to hold separate Democratic-only events after March 7. In the end, the DNC RBC maintained the March 7, 2000 opening of the window for all states other than Iowa and New Hampshire.  As a result, the Arizona, Delaware and Washington State Democratic

Parties all treated their respective state-run presidential primaries as non-binding events and held separate party-run events in March 2000, in compliance with the DNC's rules.

38.     After the adoption of the 2008 Delegate Selection Rules, during the remainder of 2006 and early 2007 a number of Democratic state legislative leaders and Democratic Governors considered sponsoring and/or supporting legislation to move their state's first events to a date prior to February 5, 2008, in violation of the DNC's rules. These leaders were informed of the DNC's rules and the sanctions that would be imposed on their state Democratic Parties.  During the first half of 2007, in no state in the country—other than Florida—was any legislation enacted moving the state's primary to a date that would violate the DNC 2008 Delegate Selection Rules.

39.     In April 2007, the Florida legislature enacted and in May, 2007, the Governor of Florida signed into law, a measure providing for a binding presidential preference primary to take place on January 29, 2008, in violation of the DNC's rules. H.B. 537, amending section 103.101(1), Florida Statutes.

40.     Throughout the months of March 2007 and April 2007 officials of the DNC and Florida Democratic Party (FDP) had discussions about the status of the pending legislation and what activities the DNC could engage in to try and influence Democratic state legislators to bring Florida's system into compliance with DNC Rules. Even before the law was signed by Governor Crist on May 21, 2007, DNC and FDP officials began discussions about how to cope with the new law setting the primary date for January 29, 2008, in violation of the DNC's 2008 Delegate Selection Rules. This included an in-person meeting between the parties on Sunday, May 7, 2007 in Annapolis, Maryland.

41.    In May and June 2007, with assistance by the DNC, the FDP developed a plan for an alternative, party run vote by mail process that would be scheduled for a date complying with the rules. On June 10, 2007, however, the Florida Democratic State Executive Committee (FDSEC) voted to make the state-run, January 29 primary binding and submitted to the DNC RBC a delegate selection plan based on that primary.

42.    Throughout July and early August 2007, discussions between the DNC and FDP officials continued, including another in-person meeting on August 11, 2007.  Following that meeting the DNC then developed a proposed State Party-run caucus system, with congressional district caucuses to take place after February 5, 2008. That system would fully comply with the DNC's Rules and afford an opportunity for all Florida Democrats to vote for the Democratic presidential nominee.  The cost to FDP of implementing that caucus system was budgeted at about $870,000. The DNC offered to pay the entire cost of the caucus system. This was unprecedented: no similar offer had been extended to any of the five state Democratic parties forced to run party events in the 2000 cycle, or any previous cycle, in order to comply with the DNC Rules.

43.    After considerable further discussions between FDP and the DNC, and among the leaders and elected officials of FDP, the FDP rejected this offer.

44.    On August 4, 2007, the FDSEC approved submission of a delegate selection plan based on use of the January 29, 2008 primary and that plan was submitted to the DNC RBC on August 7, 2007.

45.    On information and belief, on August 11, 2007, the FDP Chair, FDP Executive Director and several Florida DNC members met privately with DNC

senior staff and James Roosevelt, the co-chair of the DNC RBC, in the course of a DNC Executive Committee meeting held in Burlington, Vermont. During that private meeting, the DNC officials informed the FDP representatives that, if the FDP persisted in its refusal to adopt an alternate plan complying with DNC Rules, it was likely that the DNC RBC would not only allow the automatic sanctions to go into place (50% reduction in delegates), but would use its authority to further reduce Florida's delegation to zero delegates.

46.    On August 25, 2007, the DNC RBC met in Washington, D.C. to consider 32 state delegate selection plans, including the plan submitted by Florida.  The Committee heard extensive presentations by FDP State Chair Karen Thurman, Florida Democratic National Committeeman Jon Ausman, and Florida Democratic National Committeewoman Terrie Brady.   Members of the Committee then discussed the issue at length, carefully weighing the impact of sanctions against the need for the DNC to be able to enforce its rules on timing to vindicate the goals and values identified by the Price-Herman Commission, and lest the nominating process descend into chaos, with each state free to leapfrog other states in a never-ending cycle.

47.    After that discussion, by a voice vote with only one (1) "no" vote cast, the DNC RBC found the Florida 2008 Delegate Selection Plan in non-compliance with the Delegate Selection Rules because of the violation of the DNC's rule on timing. Under DNC Rule 20(C)(1)(a),  that finding triggered the automatic reduction of the State Party's delegation by 50% and the disentitlement of the state's DNC members and Democratic Members of Congress to attend the Convention as delegates. As part of the

same motion, under Rule 20(C)(5) and 20(C)(6), the DNC RBC voted to further reduce the state's total number of pledged and unpledged delegates to zero.

48.    Under provisions of the RBC's internal regulations, the FDP was given an additional 30-day period of time, following that meeting, in which to submit a revised Plan that complied with the timing requirements of DNC Rules. The official finding of Non-Compliance was received by the FDP via certified mail on August 30, 2007. The 30-day time period expired on September 29, 2007.

49.    Again during September 2007 DNC officials had conversations with a number of Florida party leaders, elected officials and FDP officials. Through all of those conversations the DNC reiterated that the FDP had the option to use a party-run caucus process to allocate delegates and that the DNC was willing to pay for it.

50.    On September 29, 2007 FDP Chair Karen Thurman notified the DNC RBC Co-Chairs that the FDP was reaffirming the delegate selection plan previously submitted, which is based on the January 29, 2008 primary. Chair Thurman's letter acknowledges that the FDP spent months considering potential Party-run alternatives that would have complied with the DNC Rules but that the FDP did not consider any of those alternatives to be acceptable.

51.    On October 5, 2007 the DNC RBC Co-Chairs formally notified the FDP that the State Party's decision not to submit a complying plan based on an alternative State Party-run process means the FDP is now subject to the 100% delegate reductions imposed by the RBC at its August 25, 2007 meeting. The official notification noted the disappointment "in view of those consequences" that the FDP did not choose to implement a Party-run alternative plan that could have complied with the rules and

provided Florida Democrats with a full opportunity to participate in the presidential nominating process and to send a full delegation to the Convention."

52.     To this day no other state Democratic Party has held a caucus or primary in violation of the timing provisions of the DNC Delegate Selection Rules with the exception of the Michigan Democratic Party, which ultimately chose to use a state-run presidential preference primary taking place on January 15, 2008, in violation of the DNC's rules. The DNC RBC imposed exactly the same sanctions on the Michigan Democratic Party as the Committee had on the FDP.

53.     Discussions between the DNC and the FDP about holding an alternative process complying with the DNC rules took place at various times during the period from October 2007 through and including April 2008. These discussions included, among other things, consideration of a new state-run primary taking place in spring of 2008 funded by the State; a new state-run primary taking place in the spring of 2008 funded by private contributions raised by the FDP; and a party-run vote-by-mail process, taking place in the spring of 2008.

54.     In the course of these discussions, the FDP submitted to the DNC, in March 2008, for informal review and discussion, a written plan for an alternative, party-run vote by mail process in which ballots would be mailed out to all Florida Democratic voters on May 9, 2008 and returned to the FDP for counting by June 3, 2008.

55.     The FDP decided, however, that there was not a consensus among its elected officials and Party leaders for pursuing that option and did not ultimately submit the new plan to the DNC RBC for formal consideration.

56.         The DNC's rules provide for resolution, within the Party organization, of disputes relating to the selection of delegates to the Democratic National Convention.  Under the Call to the 2008 Democratic National Convention,  there are three standing committees of the National Convention, one of which is the Credentials Committee.  (Call to Convention, Article VII). Each committee consists of 161 members allocated among the states, with each state's delegate positions on each committee allocated among presidential candidates based on the results of that state's primary or caucus.  (*Id.* §§VII(A)(1) & (C)). An additional 25 party leaders and elected officials serve as members of each standing committee; these are elected by the DNC Executive Committee upon nomination by the National Chair of the DNC. (*Id.* §§VII(A)(2) & (B)(2)).

57.         Under the Call to the Convention, the Credentials Committee of the Convention has the Convention has the power to determine and resolve questions concerning the seating of delegates to the Convention.  (*Id.* §VII(J)(1)).  Under the Call, the Credentials Committee of the National Convention assumes jurisdiction of such questions as to any challenge brought before the DNC RBC on or after the 56th day before the Convention (June 29, 2008) or any challenge brought before the DNC RBC before that date but not resolved as of that date. Appendix A, Rules of Procedure of the Credentials Committee of the 2008 Democratic National Convention, Rule 1.

58.         Thus, the DNC RBC has jurisdiction, under the Party's rules, to determine and resolve challenges brought prior to June 29, 2008, concerning the seating of delegates to the Convention.

59.        On March 17, 2008, two such challenges were received by the DNC RBC, relating to the seating of delegates from Florida.  Both challenges were filed by fifteen Democrats from Florida as required by the DNC RBC Regulations and were otherwise filed in proper form.  The first challenge seeks the reinstatement of all of the unpledged delegates from Florida.  The second challenge seeks the reinstatement of one-half of the pledged delegates from Florida, as if the automatic sanctions of Rule 20(C)(1), (2) & (3) of the DNC Delegate Selection Rules had been applied to the FDP without the imposition of any further sanctions by the RBC.

60.        On April 2, 2008, following a meeting among DNC Chair Governor Howard Dean and members of the Florida Democratic Congressional delegation, the DNC issued a joint statement from Governor Dean, the Members of the Congressional delegation and FDP Chair Karen Thurman, stating that "We are all committed to doing everything we can to ensure that a Florida delegation is seated in Denver."  A copy of the full Joint Statement is attached as Exhibit D.

61.        On April 25, 2008, the DNC RBC notified its members that the DNC RBC will hold a meeting on Saturday, May 31, 2008, to consider these challenges as well as a challenge relating to the seating of delegates from Michigan.


I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on April 30, 2008.

Philip McNamara

# EXHIBIT A



**Democratic National Committee**

# DELEGATE SELECTION RULES

### FOR THE 2008 DEMOCRATIC NATIONAL CONVENTION

Issued by the Democratic Party of the United States

*Governor Howard Dean, Chairman*

*As adopted by the Democratic National Committee, August 19, 2006.*

Democratic Party Headquarters  ■  430 South Capitol Street, SE  ■  Washington, DC, 20003  ■  (202) 863-8000  ■  Fax (202) 863-8174
*Paid for by the Democratic National Committee. Contributions to the Democratic National Committee are not Tax Deductible.*
Visit our website at www.democrats.org

*(This page intentionally left blank.)*

# TABLE OF CONTENTS
## RULE NUMBER

| | | |
|---|---|---|
| 1. | PUBLICATION AND SUBMISSION OF STATE PARTY RULES | 1 |
| 2. | PARTICIPATION | 3 |
| 3. | SCHEDULING OF DELEGATE SELECTION MEETINGS | 5 |
| 4. | AN OPEN PARTY | 5 |
| 5. | NON-DISCRIMINATION | 6 |
| 6. | AFFIRMATIVE ACTION | 6 |
| 7. | INCLUSION PROGRAMS | 8 |
| 8. | NATIONAL CONVENTION DELEGATE APPORTIONMENT | 9 |
| 9. | UNPLEDGED AND PLEDGED PARTY LEADERS AND ELECTED OFFICIAL DELEGATES | 10 |
| 10. | SELECTION OF AT-LARGE DELEGATES | 12 |
| 11. | TIMING OF THE DELEGATE SELECTION PROCESS | 12 |
| 12. | PRESIDENTIAL PREFERENCE | 12 |
| 13. | FAIR REFLECTION OF PRESIDENTIAL PREFERENCE | 14 |
| 14. | PETITION REQUIREMENTS AND FILING DEADLINES | 16 |
| 15. | QUORUM REQUIREMENTS | 17 |
| 16. | PROXY VOTING | 17 |
| 17. | UNIT RULE AND SLATE-MAKING | 17 |
| 18. | ALTERNATES AND VACANCIES | 17 |
| 19. | DNC RULES AND BYLAWS COMMITTEE | 18 |
| 20. | CHALLENGES | 19 |
| 21. | STATE LEGISLATIVE CHALLENGES | 22 |

*(This page intentionally left blank.)*

# DELEGATE SELECTION RULES
## FOR THE 2008 DEMOCRATIC NATIONAL CONVENTION

*As adopted by the Democratic National Committee, August 19, 2006.*

## 1. PUBLICATION AND SUBMISSION OF STATE PARTY RULES

A.  State parties shall adopt Affirmative Action and Delegate Selection Plans which contain explicit rules and procedures governing all aspects of the delegate selection process. These rules shall include, but are not limited to:

   1. Procedures for electing and certifying delegates and alternates at all levels;

   2. Timing of primary/caucuses/conventions;

   3. Procedures providing for equal division in each state's convention delegation;

   4. Procedures providing for the selection of the chair of the delegation;

   5. Particulars concerning the scheduling of delegate selection meetings including methods by which each meeting or event will be publicized;

   6. Affirmative Action Plans in detail including affirmative action obligations of presidential candidates;

   7. All petition requirements and filing deadlines for delegate and alternate candidates and for presidential candidates;

   8. Procedures for ascertaining delegate/alternate preference at all stages;

   9. Procedures for presidential candidate right of approval;

   10. Method of awarding delegates and alternates to presidential candidates;

   11. Methods and timetable for the selection of permanent standing committee members;

   12. Methods and timetable for the selection of temporary standing committee members;

   13. Procedures for challenges of the delegate selection and affirmative action processes;

   14. Methods and timetable for the selection of convention pages; and

   15. Other appropriate provisions from these Rules, the Call and the Regulations.

B.  The following items are to be routinely included at an appropriate place in each state plan:

## 2008 Delegate Selection Rules for the Democratic National Convention

1.      Eligibility requirements for participation in the delegate selection process in conformance with Rule 2 [Rule 2];

2.      Prohibition of cost and fees [Rule 2.D.];

3.      Prohibition of participation by those participating in another party's process [Rule 2.E.];

4.      One-meeting limitation for first-stage participants [Rule 3.E.];

5.      "Six basic elements" of an open party [Rule 4];

6.      Non-discrimination principles [Rule 5];

7.      Requirement that all steps take place within calendar year of convention [Rule 11.];

8.      Required identification of preference of candidates for delegate and alternate [Rule 12.A.];

9.      Protection against coerced vote [Rule 12.I];

10.     Quorum requirements [Rule 15];

11      Proxy voting rules, if any [Rule 16];

12.     Unit rule prohibition [Rule 17.A.];

13.     Slate making limitations [Rule 17.B.]; and

14.     Succession of alternates to delegate status and filling of vacancies in delegate positions [Rule 18].

C.      Each state party shall provide for a thirty (30) day[1] period of public comment to solicit opinion on the state's Affirmative Action Plan and Delegate Selection Plan prior to adoption. All written public comments submitted to the state Democratic Committee shall be submitted along with the plans to the Rules and Bylaws Committee of the Democratic National Committee ("DNC Rules and Bylaws Committee").

D.      State Delegate Selection and Affirmative Action Plans shall be submitted to the DNC Rules and Bylaws Committee for approval on or before May 1, 2007.

E.      The DNC Rules and Bylaws Committee shall act on the proposed plans as soon as practicable, but in no case later than September 16, 2007, or four months before the respective state's first determining step, whichever is earlier. Its decision shall be final and binding.

---

[1] Unless otherwise explicitly specified, reference in these Rules to "day" or "days" means "calendar days." If the last day of a period falls on a Saturday, Sunday or a federally recognized holiday, the time shall be extended to the next business day.

Page 2

**2008 Delegate Selection Rules for the Democratic National Convention**

F.     Implementation of state Affirmative Action Plans shall begin no later than September 16, 2007, or four months before the respective state's first determining step, whichever is earlier.

G.     State Delegate Selection Plans shall specify the methods and timetable to be followed in selecting permanent and temporary members of standing committees of the national convention. These procedures shall be in conformity with the rules to be contained in the Call for the 2008 Convention.

H.     The Democratic National Committee ("DNC") and the state parties shall publish and make available at no cost their rules, the 2008 National Delegate Selection Rules, and a clear and concise explanation of how Democratic voters can participate in the delegate selection process. The DNC shall prepare and provide at no cost to state parties a clear and concise explanation of the 2008 Delegate Selection Rules. This shall be done no later than October 1 of the calendar year immediately preceding the calendar year of the national convention.

## 2.     PARTICIPATION

A.     Participation in the delegate selection process shall be open to all voters who wish to participate as Democrats.

    1.     Democratic voters shall be those persons who publicly declare their Party preference and have that preference publicly recorded.

    2.     Implementation of this administrative matter shall be delegated to the DNC Rules and Bylaws Committee.

B.     Nothing in these rules shall be interpreted to encourage or permit states with party registration and enrollment, or states that limit participation to Democrats only, to amend their systems to open participation to members of other parties.

C.     State parties shall take all feasible steps to encourage non-affiliated and new voters to register or enroll, to provide simple procedures through which they may do so and to eliminate excessively long waiting periods for voters wishing to register or to change their party enrollment status. In all caucuses or conventions conducted pursuant to these rules, all Democrats who comply with Rule 2.A, 2.A.(1), 2.A.(2). shall be allowed to participate.

D.     At no stage of the delegate selection process shall any person be required, directly or indirectly, to pay a cost or fee as a condition for participating in the delegate selection process. Voluntary contributions to the Party may be made, but under no circumstances shall a contribution be mandatory for participation.

E.     No person shall participate or vote in the nominating process for a Democratic presidential candidate who also participates in the nominating processes of any other party for the corresponding elections.

F.     In accordance with Article Nine, Section 12 of the Charter of the Democratic Party of the United States, votes shall not be taken by secret ballot at any stage of the delegate selection process, including processes leading up to the selection of DNC Members or State Chairs and Vice Chairs, who serve as DNC members by virtue of their office, except that use of such voting by secret ballot may be used in a state run or state party run primary which

constitutes the first determining stage of the delegate election process and in which all individual voters are eligible to participate in accordance with the provisions of this Rule 2.

G. The casting of ballots over the Internet may be used as a method of voting in a vote only for presidential preference in a state party-run primary constituting the first determining stage in the presidential nominating process, and only if such casting of ballots over the Internet:

    1.     Is used in a system in which voters may cast their ballots in person on the day of such primary and by mail, and in which casting of ballots over the Internet is an alternate means of voting;

    2.     Is accompanied by a comprehensive, proactive education and outreach program on the use of Internet voting that is set forth in the state's delegate selection plan and approved by the DNC Rules and Bylaws Committee;

    3.     Is conducted in accordance with a plan approved by the DNC Rules and Bylaws Committee that is included in the state's delegate selection plan, and that provides adequate measures to achieve security, reliability, access to eligible voters and transparency, including contractual and other safeguards to secure exclusive ownership and control by the state party of voting data;

    4.     Is accomplished through a system which provides the voter with an opportunity to verify the voter's ballot and correct any error before the voter's vote is cast; which can be permanently maintained by the voter at the voter's option in paper, electronic or other form; and which produces a paper record of the voter's vote that is preserved and maintained by the state party in the event of a manual audit, until the expiration of the time for filing an implementation challenge under these Rules.

H. In states using government-run voting systems in the delegate selection process, State Delegate Selection Plans shall include provable positive steps (as defined in Rule 21) taken or to be taken by the state party to:

    1.     Promote the acquisition of accessible precinct based optical scan systems wherever possible;

    2.     Seek enactment of legislation, rules and policies at the state and local level to ensure that direct recording electronic systems include a voter verified paper record;

    3.     Seek enactment of legislation, rules and policies at the state and local level to ensure that both optical scan and direct recording electronic systems include recognized security measures such as:

        a.     Automatic routine manual audits comparing paper records to electronic records following every election and prior to certification of results where possible;

        b.     Parallel testing on Election Day;

        c.     Physical and electronic security for equipment;

**2008 Delegate Selection Rules for the Democratic National Convention**

    d.       Banning use of wireless components and connections;

    e.       Public disclosure of software design;

    f.       Use of transparent and random selection for all auditing procedures;

    g.       Effective procedures for addressing evidence of fraud or error.

## 3. SCHEDULING OF DELEGATE SELECTION MEETINGS

A.      All official Party meetings and events related to the national convention delegate selection process, including caucuses, conventions, committee meetings, filing dates, and Party enrollment periods, shall be scheduled for dates, times and public places which would be most likely to encourage the participation of all Democrats, and must begin and end at reasonable hours.

B.      All such meetings or events which are the first meeting or event in the delegate selection process shall be scheduled at times and dates which are uniform throughout the state, except where it is established by the state party and approved by the DNC Rules and Bylaws Committee that such uniform times and dates would significantly reduce participation in the delegate selection process.

C.      The times, dates, places, and rules for the conduct of all caucuses, conventions, meetings and other events involved in the delegate selection process shall be effectively publicized by the Party organization, official, candidate or member calling the same.

D.      Concise statements in advance of all meetings and events concerning the relationship between the business to be conducted and the delegate selection process shall be effectively publicized by the Party organization, official, candidate or member calling the same.

E.      No person shall participate in more than one meeting which is the first meeting in the delegate selection process.

## 4. AN OPEN PARTY

A.      The Democratic National Committee reaffirms its commitment to the 1964 resolution, and requires the national and state parties to incorporate the Six Basic Elements, as updated, into their Party rules and to take appropriate steps to secure their implementation.

B.      The 1964 Democratic National Convention adopted a resolution which conditioned the seating of delegates at future conventions on the assurances that discrimination in any state party affairs on the ground of race, color, creed or national origin did not occur. The 1968 Convention adopted the 1964 Convention resolution for inclusion in the Call for the 1972 Convention. In 1966, the Special Equal Rights Committee, which had been created in 1964, adopted six anti-discrimination standards — designated as the Six Basic Elements, which, as updated, are as follows:

    1.      All public meetings at all levels of the Democratic Party in each state should be open to all members of the Democratic Party regardless of race, sex, age, color, creed, national origin, religion, ethnic identity, sexual orientation, economic status or physical disability (hereinafter collectively referred to as "status").

2. No test for membership in, nor any oaths of loyalty to, the Democratic Party in any state should be required or used which has the effect of requiring prospective or current members of the Democratic Party to acquiesce in, condone or support discrimination based on "status."

3. The time and place for all public meetings of the Democratic Party on all levels should be publicized fully and in such manner as to assure timely notice to all interested persons. Such meetings must be held in places accessible to all Party members and large enough to accommodate all interested persons.

4. The Democratic Party, on all levels, should support the broadest possible registration without discrimination based on "status."

5. The Democratic Party in each state should publicize fully and in such a manner as to assure notice to all interested parties a full description of the legal and practical procedures for selection of Democratic Party officers and representatives on all levels. Publication of these procedures should be done in such fashion that all prospective and current members of each state Democratic Party will be fully and adequately informed of the pertinent procedures in time to participate in each selection procedure at all levels of the Democratic Party organization.

6. The Democratic Party in each state should publicize fully and in such a manner as to assure notice to all interested parties a complete description of the legal and practical qualifications of all positions as officers and representatives of the state Democratic Party. Such publication should be done in timely fashion so that all prospective candidates or applicants for any elected or appointed position within each state Democratic Party will have full and adequate opportunity to compete for office.

C. These provisions demonstrate the intention of the Democratic Party to ensure a full opportunity for all "status" (as defined in Rule 4.B.(1)) members to participate in the delegate selection process.

## 5.   NON-DISCRIMINATION

A. In order that the Democratic Party at all levels be an open Party which includes rather than excludes people from participation, a program of effective affirmative action is hereby adopted.

B. Discrimination on the basis of "status" in the conduct of Democratic Party affairs is prohibited.

C. In order to continue the Democratic Party's ongoing efforts to include groups historically under-represented in the Democratic Party's affairs, by virtue of race, ethnicity, age, sexual orientation or disability, each state party shall develop and submit Party outreach programs, including recruitment, education and training, in order to achieve full participation by such groups and diversity in the delegate selection process and at all levels of Party affairs.

## 6.   AFFIRMATIVE ACTION

A. The promises of a democratically elected government and the right to vote have not always been extended equally to all Americans.  Historically, certain groups of Americans have  been

## 2008 Delegate Selection Rules for the Democratic National Convention

explicitly denied the right to vote or have been subjected to discriminatory and exclusionary practices with the intended effect of denying them voting rights. In recognition of this past history of discriminatory denial of the franchise and in order to encourage full participation by all Democrats in the delegate selection process and in all Party affairs, the national and state Democratic Parties shall adopt and implement affirmative action programs with specific goals and timetables for African Americans, Hispanics, Native Americans, Asian/Pacific Americans and women.

1. The goal of such affirmative action shall be to encourage participation in the delegate selection process and in Party organizations at all levels by the aforementioned groups as indicated by their presence in the Democratic electorate.

2. This goal shall not be accomplished either directly or indirectly by the Party's imposition of mandatory quotas at any level of the delegate selection process or in any other Party affairs.

3. In the selection of each state's at-large delegation, priority of consideration shall be given to African Americans, Hispanics, Native Americans, Asian/Pacific Americans and women, if such priority of consideration is needed to fulfill the affirmative action goals outlined in the state's Delegate Selection Plan. Such remedial action is necessary in order to overcome the effects of past discrimination. Use of the at-large delegation to fulfill the plan's affirmative action goals does not obviate the need for the state party to conduct outreach activities such as recruitment, education and training. Priority of consideration shall also be given to other groups as described in Rule 5.(C), which are under-represented in Democratic Party affairs, in order to assist in the achievement of full participation by these groups.

B. Performance under an approved Affirmative Action Plan and composition of the convention delegation shall be considered relevant evidence in the challenge to any state delegation. If a state party has adopted and implemented an approved affirmative action program, the state party shall not be subject to challenge based solely on delegation composition or primary results.

C. State Delegate Selection Plans shall provide for equal division between delegate men and delegate women and alternate men and alternate women within the state's entire convention delegation. For purposes of this rule, the entire delegation includes all pledged delegates and alternates and unpledged delegates (including unpledged party leaders and elected official delegates and unpledged add-on delegates).

1. State Delegate Selection Plans shall, as far as mathematically practicable, also provide for equal division between district-level delegate men and delegate women and district-level alternate men and alternate women.

2. The DNC Rules and Bylaws Committee shall have continuing jurisdiction to ensure compliance with this equal division requirement. No at-large delegate or alternate from a state shall be placed on the temporary roll of the 2004 Democratic National Convention unless the Rules and Bylaws Committee has certified to the Secretary of the Democratic National Committee that such state's delegation complies with this equal division rule. It shall be the duty of the DNC Rules and Bylaws Committee to determine such compliance as soon as

practicable following the certification of the state's at-large delegates and alternates.

3.      Notwithstanding sub-paragraph A.(2) above, equal division at any level of delegate or committee positions between delegate men and delegate women or committeemen and committeewomen shall not constitute a violation of any provision thereof.

D.      For purposes of providing adequate notice of the delegate selection process under Rule 3, the times, dates, places and rules for the conduct of all caucuses, conventions, meetings and other events involved in the delegate selection process shall be effectively publicized, bilingually where necessary, to encourage the participation of minority groups.

E.      State Democratic Parties shall ensure that district lines used in the delegate selection process are not gerrymandered to discriminate against African Americans, Hispanics, Native Americans, Asian/Pacific Americans or women.

F.      Each state Affirmative Action Plan shall provide for the appointment of a representative state Affirmative Action Committee by March 1, 2007. Before the state party submits its Plan to the DNC Rules and Bylaws Committee, the Affirmative Action Committee shall review the proposed outreach program required in Rule 5.C.

G.      Each state affirmative action program shall include outreach provisions to encourage the participation and representation of persons of low and moderate income, and a specific plan to help defray expenses of those delegates otherwise unable to participate in the national convention.

H.      State parties in their Delegate Selection Plans shall impose reasonable specific affirmative action obligations upon candidates consistent with the delegate selection system employed by the state.

1.      State parties shall require presidential candidates to submit statements that specify what steps such candidates will take to encourage full participation in their delegate selection process, including, but not limited to, procedures by which persons may file as candidates for delegate or alternate. Provided further that presidential candidates submit such full participation statements to the DNC Rules and Bylaws Committee at the same time they are submitted to state parties.

2.      State parties shall require presidential candidates to submit demographic information with respect to candidates for delegate and alternate pledged to them.

I.      Each state party shall certify to the Rules and Bylaws Committee whether each Presidential candidate (including uncommitted status) has used best efforts to ensure that their respective delegations at each level within a state's delegation shall fulfill the requirements of Rule 6 and Rule 7 established by the state's Delegate Selection Plan and that the respective delegations of each presidential candidate within the state's delegation shall be equally divided between men and women.

## 7.   INCLUSION PROGRAMS

The Democratic National Committee recognizes that other groups of Americans in addition to those described in Rule 6 may be under-represented in Party affairs. These groups include

members of the LGBT community and people with disabilities. The National and State Parties shall adopt and implement Inclusion Programs in order to achieve the full participation of members of these and other groups in the delegate selection process and in all party affairs, as indicated by their presence in the Democratic electorate.  As is already the practice in some states, State Parties may use goals to achieve these ends; however, in no event may such participation be accomplished by the use of quotas.

## 8. NATIONAL CONVENTION DELEGATE APPORTIONMENT

A.   Apportionment of district-level delegates within states shall be based on one of the following:

    1.   A formula giving equal weight to total population and to the average of the vote for the Democratic candidates in the two most recent presidential elections;

    2.   A formula giving equal weight to the vote for the Democratic candidates in the most recent presidential and gubernatorial elections;

    3.   A formula giving equal weight to the average of the vote for the Democratic candidates in the two most recent presidential elections and to Democratic Party registration or enrollment as of January 1, 2008; or

    4.   A formula giving one-third (1/3) weight to each of the formulas in items (1), (2), and (3).

B.   Apportionment for each body selecting delegates to state, district, and county conventions shall be based upon population and/or some measure of Democratic strength.

C.   The Call for the 2008 Convention shall state the base delegation for each delegation. Seventy-five percent (75%) of each state's base delegation shall be elected at the congressional district level or smaller. Twenty-five percent (25%) of each state's base delegation shall be elected at large. Delegates so elected shall hereafter be termed "district-level" and "at-large" delegates, respectively. Each State Democratic Chair shall certify all delegates in writing to the Secretary of the DNC.

D.   In those states with more than one congressional district, after the election of district-level delegates and prior to the selection of at-large delegates, each State Democratic Chair shall certify pledged party leader and elected official delegates equal to 15% of the state's base delegation selected pursuant to Rule 9.

E.   The election of district-level and at-large delegates and alternates may take place at the same meeting, provided that district-level delegates are selected first. In states with one congressional district the election of delegates selected in accordance with Rules 8.B., 8.C., and 9.A., may be conducted simultaneously. In all cases, affirmative action and fair reflection guidelines must be met and the Democratic Chair of each such state shall make the certifications required by subsection 8.D.

## 9.   UNPLEDGED AND PLEDGED PARTY LEADERS AND ELECTED OFFICIAL DELEGATES

A.   The procedure to be used for certifying unpledged party leader and elected official delegates is as follows:

Not later than March 1, 2008, the Secretary of the Democratic National Committee shall officially confirm to each State Democratic Chair the names of the following unpledged delegates who legally reside in their respective state and who shall be recognized as part of their state's delegation unless any such member has publicly expressed support for the election of, or has endorsed, a presidential candidate of another political party;

1.   The individuals recognized as members of the DNC (as set forth in Article Three, Sections 2 and 3 of the Charter of the Democratic Party of the United States); and,

2.   The Democratic President and the Democratic Vice President of the United States, if applicable; and,

3.   All Democratic members of the United States House of Representatives and all Democratic members of the United States Senate; and,

4.   The Democratic Governor, if applicable; and,

5.   All former Democratic Presidents, all former Democratic Vice Presidents, all former Democratic Leaders of the U.S. Senate, all former Democratic Speakers of the U.S. House of Representatives and Democratic Minority Leaders, as applicable, and all former Chairs of the Democratic National Committee.

B.   Following the selection of district-level delegates, and prior to the selection of pledged party leader and elected official delegates, unpledged add-on delegates shall be selected according to the following procedures:

1.   Unpledged add-on delegates may be selected by either the same selecting body which will select the state's party leader and elected official delegates, or by the same selecting body which will select the state's at-large delegates and alternates.

2.   The equal division and affirmative action provisions of Rule 10.A. apply to the selection of unpledged add-on delegates.

3.   The list from which the selecting body chooses the unpledged add-on delegates shall contain the same minimum number of names for every such add-on position to be filled as the minimum number of names required by the state's delegate selection plan to remain on the list of bona fide supporters for each at-large and pledged party leader and elected official delegate pursuant to Rule 11.E.(2).

4.   Unpledged add-on delegates are not entitled to alternates, and neither shall the delegation be entitled to a replacement, except in the case of death.

     5.      Unpledged add-on delegates may be selected whether or not they previously filed a statement of candidacy for a delegate position or submitted a pledge of support for a presidential candidate.

C.     Following the selection of unpledged add-on delegates under 8.B., pledged party leader and elected official delegates are to be selected subject to the following procedures:

     1.      Persons shall be considered for pledged party leader and elected official delegates and alternates according to the following priority: big city mayors and state-wide elected officials to be given equal consideration; state legislative leaders, state legislators, and other state, county and local elected officials and party leaders.

     2.      These slots shall be allocated on the same basis as the state's at-large delegates.

     3.      If persons eligible for pledged party leader and elected official delegate positions have not made known their presidential preference under the procedures established by the state pursuant to Rule 12 for candidates for district-level and at-large delegate positions, their preferences shall be ascertained through alternative procedures established by the state party, which shall require a signed pledge of support for a presidential candidate. Such an alternative system shall have a final deadline for submitting a pledge of support after the selection of all district-level delegates has been completed and must provide an opportunity for disapproval by the presidential candidate or the candidate's authorized representative.

D.     A state's party leader and elected official delegates may be chosen by a state convention or by a committee consisting of a quorum of district-level delegates. They may also be chosen by the State Party Committee, as recognized by the Democratic National Committee, but only if the state's Delegate Selection Plan is in full compliance with these rules, and provided:

     1.      Membership on the State Party Committee is apportioned on the basis of population and/or some measure of Democratic strength;

     2.      Members of the State Party Committee have been elected through open processes in conformity with the basic procedural guarantees utilized for delegate selection;

     3.      Such delegates are elected at a public meeting subsequent to the election of district-level delegates;

     4.      Members of the State Party Committee exercising such authority shall have been elected no earlier than the date of the previous presidential election; and

     5.      Membership of the State Party Committee complies with the equal division requirements of Article 9, Section 16 of the Charter of the Democratic Party of the United States.

E.     Except as provided in 8.A. above, no person shall serve as an automatic delegate at any level of the delegate selection process by virtue of holding a public or party office.

## 10.  SELECTION OF AT-LARGE DELEGATES

A.   The selection of at-large delegates shall be used, if necessary, to achieve the equal division of positions between men and women and the representation goals established in the state party's Affirmative Action Plan. Such goals apply to the state's entire delegation considered as a whole. For purposes of this rule, the entire delegation includes all unpledged as well as all pledged delegates. Delegates and alternates shall each, as a group, be equally divided and, to the extent possible, each as a group shall reflect the representation goals established in the state's Affirmative Action Plan.

B.   A state's at-large delegates and alternates shall be selected by one of the bodies, subject to the same conditions specified in Rule 9.D. above, provided, however, the State Party Committee may choose such delegates and alternates only if the state's Delegate Selection Plan is in full compliance with these rules.

C.   At-large delegates and alternates (including pledged party leader and elected official delegates, which shall include those to be allocated to uncommitted status) in primary states shall be allocated according to the state-wide primary vote or, in states holding no state-wide primary, according to the division of preferences among convention and caucus participants. In non-primary states which do not hold state conventions authorized to elect delegates, at-large delegates shall be apportioned according to the division of preferences among district-level delegates at the time of district-level selection. If a presidential candidate entitled to an allocation under this rule is no longer a candidate at the time at-large delegates are selected, his/her allocation shall be proportionately divided among the other preferences entitled to an allocation.

## 11.  TIMING OF THE DELEGATE SELECTION PROCESS

A.   No meetings, caucuses, conventions or primaries which constitute the first determining stage in the presidential nomination process (the date of the primary in primary states, and the date of the first tier caucus in caucus states) may be held prior to the first Tuesday in February or after the second Tuesday in June in the calendar year of the national convention. Provided, however, that the Iowa precinct caucuses may be held no earlier than 22 days before the first Tuesday in February; that the Nevada first-tier caucuses may be held no earlier than 17 days before the first Tuesday in February; that the New Hampshire primary may be held no earlier than 14 days before the first Tuesday in February; and that the South Carolina primary may be held no earlier than 7 days before the first Tuesday in February. In no instance may a state which scheduled delegate selection procedures on or between the first Tuesday in February and the second Tuesday in June 1984 move out of compliance with the provisions of this rule.

B.   All steps in the delegate selection process, including the filing of presidential candidates, must take place within the calendar year of the Democratic National Convention (except as otherwise provided in these rules or specifically allowed by the DNC Rules and Bylaws Committee).

## 12.  PRESIDENTIAL PREFERENCE

A.   All candidates for delegate and alternate in caucuses, conventions, committees and on primary ballots shall be identified as to presidential preference or uncommitted status at all levels of a process which determines presidential preference.

## 2008 Delegate Selection Rules for the Democratic National Convention

B.  All persons wishing to be elected to a district-level or at-large delegate position must file a statement of candidacy designating the presidential or uncommitted preference of the delegate candidate and a signed pledge of support for the presidential candidate (including uncommitted status) the person favors, if any, with the state party by a date certain as specified in the state's Delegate Selection Plan. Persons wishing to be elected as pledged party leader and elected official delegates shall comply with Rule 9.C.(3).

C.  All candidates considered for district-level alternate positions must meet the same requirements as candidates for district-level delegate positions, except that the state may allow candidates who were not chosen at the delegate level to be considered at the alternate level.

D.  Prior to the selection of national convention delegates and alternates, the state party shall convey to the presidential candidate, or that candidate's authorized representative(s), a list of all persons who have filed for delegate or alternate positions pledged to that presidential candidate. All such delegate and alternate candidates shall be considered bona fide supporters of the presidential candidate whom they have pledged to support, unless the presidential candidate, or that candidate's authorized representative(s), signifies otherwise in writing to the state party by a date certain as specified in the state's Delegate Selection Plan.

   1.  Presidential candidates shall certify in writing to the Democratic State Chair the name(s) of their authorized representative(s) by a date certain.

   2.  In states where delegates are voted upon on the ballot, the date by which the presidential candidate, or that candidate's authorized representative(s), signifies approval or disapproval of the list of delegate and alternate candidates in writing to the state party as required by Rule 12.D., must allow sufficient time to ensure that names removed from the list do not appear on the ballot.

E.  National convention delegate and alternate candidates removed from the list of bona fide supporters by a presidential candidate, or that candidate's authorized representative(s), may not be elected as a delegate or alternate at that level pledged to that presidential candidate (including uncommitted status).

   1.  Presidential candidates may not remove any candidate for a district-level delegate or alternate position from the list of bona fide supporters unless, at a minimum, three (3) names remain for every such position to which the presidential candidate is entitled. Provided, however, that in states where individual district-level delegates and alternates are voted upon on the ballot, the presidential candidate, or that candidate's authorized representative(s), may approve a number of delegate candidates or alternate candidates equal to or greater than the number of delegates or alternates allocated to the district.

   2.  Presidential candidates (including uncommitted status), in consultation with the state party, may remove any candidate for at-large and pledged party leader and elected official delegate or alternate position from the list of bona fide supporters as long as, at a minimum, one (1) name remains for every national convention delegate or alternate position to which the presidential candidate is entitled, except that a state may provide in its delegate selection plan, if the plan is approved by the Rules and Bylaws Committee, that presidential candidates (including uncommitted status), may remove any candidate for an at-large and party leader and elected official delegate or alternate position from the list of bona

fide supporters as long as, at a minimum, two (2) names remain for every position to which the presidential candidate is entitled.

F.   State parties shall ensure that state Delegate Selection Plans provide fair and adequate time for persons to file for delegate or alternate positions, and for presidential candidates, or their authorized representative(s), to review the list of persons who have filed, and to remove from that list persons not confirmed by the presidential candidate or his/her representative(s) as bona fide supporters of the presidential candidate.

G.   Except in states where individual delegates and alternates are selected on the ballot, district-level national convention delegates and alternates pledged to a presidential candidate (including uncommitted status) shall be selected or nominated by a caucus of persons from the unit electing the delegates and alternates who sign statements of support for that presidential candidate. Uncommitted delegates and alternates shall be elected by the uncommitted caucus from the appropriate unit.

H.   A district-level delegate and alternate candidate may run for election only within the district in which he or she is registered to vote. For purposes of these rules, all delegates and alternates at any level of the delegate selection process must be bona fide Democrats who have the interests, welfare and success of the Democratic Party of the United States at heart, who subscribe to the substance, intent and principles of the Charter and the Bylaws of the Democratic Party of the United States, and who will participate in the Convention in good faith.

I.   No delegate at any level of the delegate selection process shall be mandated by law or Party rule to vote contrary to that person's presidential choice as expressed at the time the delegate is elected.

J.   Delegates elected to the national convention pledged to a presidential candidate shall in all good conscience reflect the sentiments of those who elected them.

K.   1.   Based on the right of the Democratic Party to freely assemble and to determine the criteria for its candidates, it is determined that all candidates for the Democratic nomination for President or Vice President shall:

   a.   be registered to vote, and shall have been registered to vote in the last election for the office of President and Vice President; and

   b.   have demonstrated a commitment to the goals and objectives of the Democratic Party as determined by the National Chair and will participate in the Convention in good faith.

2.   It is further determined that these requirements are in addition to the requirements set forth by the United States Constitution and any law of the United States.

## 13.   FAIR REFLECTION OF PRESIDENTIAL PREFERENCES

A.   Delegates shall be allocated in a fashion that fairly reflects the expressed presidential preference or uncommitted status of the primary voters or, if there is no binding primary, the convention and/or caucus participants.

### 2008 Delegate Selection Rules for the Democratic National Convention

B.     States shall allocate district-level delegates and alternates in proportion to the percentage of the primary or caucus vote won in that district by each preference, except that preferences falling below a fifteen percent (15%) threshold shall not be awarded any delegates. Subject to section F. of this rule, no state shall have a threshold above or below fifteen percent (15%). States which use a caucus/convention system, shall specify in their Delegate Selection Plans the caucus level at which such percentages shall be determined.

C.     A presidential candidate or his/her authorized representative(s) should act in good faith to slate delegate and alternate candidates, however, in any event, if a presidential candidate (including uncommitted status) has qualified to receive delegates and alternates but has failed to slate a sufficient number of delegate and alternate candidates, then additional delegates and alternates for that preference will be selected in a special post-primary procedure. The State Party will administer special post-primary procedures according to rules approved by the DNC Rules and Bylaws Committee and such procedures should be set forth in the state's delegate selection plan, where applicable.

D.     District-level delegates and alternates shall be allocated according to the following procedures:

     Step 1:  Tabulate the percentage of the vote that each presidential preference (including uncommitted status) receives in the congressional district to three decimals.

     Step 2:  Retabulate the percentage of the vote to three decimals, received by each presidential preference excluding the votes of presidential preferences whose percentage in Step 1 falls below 15%.

     Step 3:  Multiply the number of delegates to be allocated by the percentage received by each presidential preference.

     Step 4:  Delegates shall be allocated to each presidential preference based on the whole numbers which result from the multiplication in Step 3.

     Step 5:  Remaining delegates, if any, shall be awarded in order of the highest fractional remainders in Step 3.

E.     At-large and pledged party leader and elected official delegate and alternate positions shall be allocated to presidential preferences by reference to primary or convention votes or to the division of preference among district-level delegates or alternates, as the case may be, as specified in Rule 10.C., except that a preference falling below a threshold of fifteen percent (15%) shall not be awarded any delegates or alternates at this level. Such delegates and alternates in primary states shall be allocated to presidential preference (including uncommitted status) according to the statewide primary vote.

F.     In all situations where no preference reaches the applicable threshold, the threshold shall be the percentage of the vote received at each level of the delegate selection process by the front-runner minus 10 percent.

G.     Under no circumstances shall the use of single-delegate districts be permitted.

H.     For the purpose of fairly reflecting the division of preferences, the non-binding advisory presidential preference portion of primaries shall not be considered a step in the delegate selection process and is considered detrimental. State parties must take steps to educate the public that a

non-binding presidential preference event is meaningless, and state parties and presidential candidates should take all steps possible not to participate.

1. In a state that uses a caucus and/or convention to determine presidential preference of voters, the plan must provide for the timely reporting of the election results to the state party.

## 14. PETITION REQUIREMENTS AND FILING DEADLINES

A. If a state requires the filing of petitions with the signatures of registered/enrolled voters as the sole method to place a presidential candidate's name on the primary ballot in connection with the Democratic presidential nominating process, such number of valid signatures shall not exceed 5,000.

B. If a state requires the payment of a fee by a presidential candidate in connection with the Democratic presidential nominating process, such fee shall not exceed $2,500.

C. If a state requires the filing of a petition with the signatures of registered/enrolled voters in order to have a delegate/alternate candidate gain access to the primary ballot in connection with the Democratic presidential nominating process, the number of valid signatures shall not exceed either one half of one percent (.5%) of the registered/enrolled Democrats in such district or one half of one percent (.5%) of the total votes in such district for all Democratic presidential candidates (including uncommitted) during the immediately preceding presidential nominating process, whichever is lower, but in no event shall the number of valid signatures required exceed 500.

D. Subject to the prior sections of this rule, the number of valid signatures required of a presidential candidate to file a petition to gain access to the primary ballot, and the number of valid signatures required of a delegate/alternate candidate to gain access to the primary ballot, and the fees required to be paid to the state by a presidential candidate and by a delegate/alternate candidate to gain access to the primary ballot, in connection with the Democratic presidential nominating process, shall not exceed those in effect in the particular state as of January 1, 1994.

E. No deadline for the filing of petitions for participation in the presidential nomination process by a presidential candidate shall be less than 30 days in advance of the primary or caucus nor more than 75 days in advance of the primary or caucus.

F. No candidate for delegate or alternate shall be required to file a statement of candidacy or a pledge of support as required by Rule 12.B. prior to 30 days before such delegate or alternate candidate is to be selected or elected in a primary, caucus or pre-primary caucus; provided, however, that in states holding a presidential primary where individual district-level delegates or alternates are to be voted upon on the ballot, no candidate for delegate or alternate shall be required to submit or file a statement of candidacy or a pledge of support prior to 90 days before the date on which they are to be voted upon.

G. No candidate for at-large or pledged party leader and elected official delegate or alternate shall be required to file a statement of candidacy or a pledge of support required by Rule 12.B. prior to 30 days before the date when the delegate or alternate is to be selected or voted upon.

H.  No state's delegate selection rules may require the filing of district-level delegate or alternate candidates pledged to a presidential candidate or uncommitted status as a condition of access by a presidential candidate to the primary ballot for voting upon presidential preference.

## 15.  QUORUM REQUIREMENTS

No less than forty percent (40%) of the members of any Party body above the first level of the delegate selection process shall constitute a quorum for any business pertaining to the selection of convention delegates.

## 16.  PROXY VOTING

To insure full participation in the delegate selection process, state party rules may, at their discretion, provide for proxy voting. Such rules shall allow an accredited participant in a caucus, convention or committee meeting, after having appeared at such meeting and having established credentials, to register the non-transferable proxy with another duly accredited participant at that meeting (except where an accredited alternate is present and eligible to serve as a replacement). No such rule shall allow a person to hold more than three (3) proxies at a time.

## 17.  UNIT RULE AND SLATE-MAKING

A.  The unit rule, or any rule or practice whereby all members of a Party unit or delegation may be required to cast their votes in accordance with the will of a majority of the body, shall not be used at any stage of the delegate selection process.

B.  Any individual or group of Democrats may sponsor or endorse a slate of candidates for convention delegates. But no slate may, by virtue of such endorsement, receive a preferential place on a delegate selection ballot or be publicly identified on the ballot as the official Democratic Party organization slate, and all slates must meet identical qualifying requirements for appearing on a ballot at all levels of the delegate selection process.

## 18.  ALTERNATES AND VACANCIES

A.  Alternate delegates shall be selected by primary, convention or committee processes subject to the same National Party Rules applicable to the selection of delegates, except that the provisions of Rules 9.A. and 9.B. shall not apply to the election of alternates. Each State Democratic Chair shall certify all alternates in writing to the Secretary of the DNC.

B.  If a given presidential preference is entitled to one or more delegate positions in a state but would not otherwise be entitled to an alternate position, that preference shall be allotted one at-large alternate position.

C.  The proportions of alternates elected at the district level, and at-large, and as pledged party leader and elected official alternates, may be the same as the proportions of delegates elected in those categories.

D.  Each state Delegate Selection Plan shall specifically provide how and under what conditions an alternate is to replace or act in lieu of (collectively referred to as "replace" or "replaces") a delegate.

## 2008 Delegate Selection Rules for the Democratic National Convention

1.     Delegate Selection Plans may specify one or any combination of the following alternatives for permanent and temporary replacements:

      a.     The delegate chooses the alternate;

      b.     The delegation chooses the alternate;

      c.     The alternate who receives the highest number of votes; or

      d.     Such other process as protects the interests of presidential candidates, delegates and alternates.

2.     A permanent replacement occurs when a delegate resigns or dies prior to and during the National Convention and the alternate replaces the delegate for the remainder of the National Convention. Any alternate who permanently replaces a delegate shall be certified in writing to the Secretary of the DNC by the State Democratic Chair. He/She shall be of the same presidential preference (including uncommitted status) and sex of the delegate he/she replaces, and to the extent possible shall be from the same political subdivision within the state as the delegate; except in the case where the presidential candidate has only one alternate, in which case, that alternate shall become the certified delegate.

3.     A temporary replacement occurs when a delegate is to be absent for a limited period of time during the convention and an alternate temporarily acts in the delegate's place. Any alternate who temporarily replaces a delegate must be of the same presidential preference (including uncommitted status) as the delegate he/she replaces, and to the extent possible shall be of the same sex and from the same political subdivision within the state as the delegate.

E.     Delegates elected under the provisions of Rules 9.A. and 9.B. shall not be entitled to name a replacement under Rule 18.D. nor shall the state be entitled to a replacement except in case of death.

F.     A vacant alternate position shall be filled by the delegation. The replacement shall be of the same presidential preference (or uncommitted status), of the same sex and, to the extent possible, from the same political subdivision as the alternate being replaced. Each replacement of a vacant alternate position shall be certified in writing to the Secretary of the DNC by the State Democratic Chair.

## 19.   DNC RULES AND BYLAWS COMMITTEE

A.     The DNC Rules and Bylaws Committee will assist in the administration and enforce affirmative action and delegate selection requirements for the national and state Democratic Parties.

B.     The DNC Rules and Bylaws Committee shall implement the Delegate Selection Rules in a manner consistent with these rules.

C.     The DNC Rules and Bylaws Committee will provide state parties with a model Delegate Selection and Affirmative Action Plan.

D.     The DNC Rules and Bylaws Committee shall:

    1.     review Affirmative Action and Delegate Selection Plans submitted by state parties and approve or recommend changes in such plans;

    2.     conduct periodic evaluations and provide technical assistance to state parties on affirmative action and delegate selection implementation;

    3.     hear and recommend solutions to affirmative action complaints unresolved by appropriate state party bodies.

E.     The DNC Rules and Bylaws Committee shall retain jurisdiction over the approval of amendments to state Delegate Selection Plans and state delegation compliance with equal division requirements, even after the Convention Credentials Committee assumes jurisdiction over challenges to the credentials of delegates.

F.     No later than December 15, 2006, the DNC Rules and Bylaws Committee shall send to state parties its regulations adopted pursuant to these rules and a checklist.

G.     The DNC shall allocate sufficient financial resources and staff to implement this rule.

## 20. CHALLENGES

A.     Jurisdictional Challenges. Any challenges to a state party organization in respect to its status as the body entitled to sponsor a delegation from that state must be presented to the DNC at any time up to thirty (30) days prior to the initiation of the state's delegate selection process. Such a challenge must be brought by at least fifteen (15) Democrats from the state.

B.     Submission, Non-Implementation and Violation Challenges. Failure to submit or implement an approved affirmative action program by the deadline specified in these rules shall constitute grounds for a challenge with the burden of proof on the challenged party.

    1.     At any time up to thirty (30) days prior to the initiation of the state's delegate selection process, any group of not less than fifteen (15) Democrats in that state can challenge the affirmative action program on the basis of non-implementation of a specific requirement of a state plan, which challenge shall include reasonable documentation of alleged violations. (In such challenges, the challenging party shall have the burden of proof, but the challenged party shall present its case first.)

        a.     In the absence of any such challenge, the implementation of any such program shall be presumptively in compliance.

        b.     If challenged and upheld, the compliance of such implementation programs shall be conclusive but not as to compliance or non-compliance that may occur after the date of the challenge.

    2.     Challenges regarding alleged violation of an approved Delegate Selection Plan shall first be brought to the appropriate state Democratic Party body for a decision

to be rendered within twenty-one (21) days. After due notice, any aggrieved party shall have the right to appeal to the DNC Rules and Bylaws Committee within ten (10) days following the decision of the state body according to procedures established by DNC Rules and Bylaws Committee.

3. The DNC Rules and Bylaws Committee shall either certify compliance, certify non-compliance or require corrective action after which compliance or non-compliance shall be certified.

C. 1. a. Violation of timing: In the event the Delegate Selection Plan of a state party provides or permits a meeting, caucus, convention or primary which constitutes the first determining stage in the presidential nominating process to be held prior to or after the dates for the state as provided in Rule 11 of these rules, or in the event a state holds such a meeting, caucus, convention or primary prior to or after such dates, the number of pledged delegates elected in each category allocated to the state pursuant to the Call for the National Convention shall be reduced by fifty (50%) percent, and the number of alternates shall also be reduced by fifty (50%) percent. In addition, none of the members of the Democratic National Committee and no other unpledged delegate allocated pursuant to Rule 8.A. from that state shall be permitted to vote as members of the state's delegation. In determining the actual number of delegates or alternates by which the state's delegation is to be reduced, any fraction below .5 shall be rounded down to the nearest whole number, and any fraction of .5 or greater shall be rounded up to the next nearest whole number.

b. A presidential candidate who campaigns in a state where the state party is in violation of the timing provisions of these rules, or where a primary or caucus is set by a state's government on a date that violates the timing provisions of these rules, may not receive pledged delegates or delegate votes from that state. Candidates may, however, campaign in such a state after the primary or caucus that violates these rules. "Campaigning" for purposes of this section includes, but is not limited to, purchasing print, internet, or electronic advertising that reaches a significant percentage of the voters in the aforementioned state; hiring campaign workers; opening an office; making public appearances; holding news conferences; coordinating volunteer activities; sending mail, other than fundraising requests that are also sent to potential donors in other states; using paid or volunteer phoners or automated calls to contact voters; sending emails or establishing a website specific to that state; holding events to which Democratic voters are invited; attending events sponsored by state or local Democratic organizations; or paying for campaign materials to be used in such a state. The Rules and Bylaws Committee will determine whether candidate activities are covered by this section.

2. Violation of proportional representation: In the event the Delegate Selection Plan of a state party provides or permits the pledged delegates or alternates to be allocated to a presidential preference (including uncommitted status) other than as provided under Rule 13 of these rules, or in the event a state party, in fact, allocates its pledged delegates or alternates to a presidential preference (including uncommitted status) other than as provided under Rule 13 of these rules, the delegation of the state shall be reduced by the same amount and as provided in section C.(1) of this rule.

## 2008 Delegate Selection Rules for the Democratic National Convention

3.    Violation of the threshold: In the event the Delegate Selection Plan of a state party provides or permits a threshold other than fifteen percent (15%) percent as set forth in Rule 13 of these rules, or in the event a state party in fact permits the implementation of a threshold other than fifteen percent (15%) percent as provided in Rule 13 of these rules, the delegation of the state shall be reduced by the same amount and as provided in section C.(1) of this rule.

4.    Upon a determination of the DNC Rules and Bylaws Committee that a state is in violation as set forth in subsections (1), (2) or (3) of section C. of this rule, the reductions required under those subsections shall become effective automatically and immediately and without further action of the DNC Rules and Bylaws Committee, the Executive Committee of the DNC, the DNC or the Credentials Committee of the Democratic National Convention.

5.    Nothing in the preceding subsections of this rule shall be construed to prevent the DNC Rules and Bylaws Committee from imposing additional sanctions, including, without limitation, those specified in subsection (6) of this section C., against a state party and against the delegation from the state which is subject to the provisions of any of subsections (1) through (3) of this section C., including, without limitation, establishing a committee to propose and implement a process which will result in the selection of a delegation from the affected state which shall (i) be broadly representative, (ii) reflect the state's division of presidential preference and uncommitted status and (iii) involve as broad participation as is practicable under the circumstances.

6.    Nothing in these rules shall prevent the DNC Rules and Bylaws Committee from imposing sanctions the Committee deems appropriate with respect to a state which the Committee determines has failed or refused to comply with these rules, where the failure or refusal of the state party is not subject to subsections (1), (2) or (3) of this section C. Possible sanctions include, but are not limited to: reduction of the state's delegation; pursuant to Rule 21.C., recommending the establishment of a committee to propose and implement a process which will result in the selection of a delegation from the affected state which shall (i) be broadly representative, (ii) reflect the state's division of presidential preference and uncommitted status and (iii) involve as broad participation as is practicable under the circumstances; reducing, in part or in whole, the number of the state's temporary and permanent members to the Standing Committees; reducing, in part or in whole, the number of guests, VIP and other passes/tickets to the National Convention and related functions; assignment of location of the state's delegates and alternates in the Convention hall; and assignment of the state's housing and other convention related facilities.

7.    In the event a state shall become subject to subsections (1), (2) or (3) of section C. of this rule as a result of state law but the DNC Rules and Bylaws Committee, after an investigation, including hearings if necessary, determines the state party and the other relevant Democratic party leaders and elected officials took all provable, positive steps and acted in good faith to achieve legislative changes to bring the state law into compliance with the pertinent provisions of these rules and determines that the state party and the other relevant Democratic party leaders and elected officials took all provable, positive steps and acted in good faith in attempting to prevent legislative changes which resulted in state law that fails to

**2008 Delegate Selection Rules for the Democratic National Convention**

comply with the pertinent provisions of these rules, the DNC Rules and Bylaws Committee may determine that all or a portion of the state's delegation shall not be reduced. The state party shall have the burden of proving by clear and convincing evidence that it and the other relevant Democratic party leaders and elected officials took all provable, positive steps and acted in good faith to achieve legislative changes to bring the state law into compliance with the pertinent provisions of these rules and that it and the other relevant Democratic party leaders and elected officials took all provable, positive steps and acted in good faith in attempting to prevent the legislative changes which resulted in state law that fails to comply with the pertinent provisions of these rules.

8. A state party may provide in its Delegate Selection Plan the specific method and procedures by which it will reduce its delegation pursuant to this Rule 20 in the event the state party or delegation becomes subject to this Rule 20 by which categories of delegates must be reduced by fifty percent(50%) percent, which specific method and procedures shall be subject to the review and approval of the DNC Rules and Bylaws Committee. In the event a state's Delegate Selection Plan does not provide for the specific method and procedures referred to in the immediately preceding sentence, or in the event the state's Delegate Selection Plan is either not approved by the DNC Rules and Bylaws Committee or the specific method and procedures referred to in the first sentence of this subsection (8) are not approved by the DNC Rules and Bylaws Committee, or in the event a state's Delegate Selection Plan specifies the method and procedures which have been approved by the DNC Rules and Bylaws Committee, but the state party fails or refuses to implement those specific method and procedures, and in the event the state's delegation is required to be reduced pursuant to this Rule 20, then the DNC Rules and Bylaws Committee shall, by lottery, or other appropriate method determined by the DNC Rules and Bylaws Committee, determine which delegates and alternates shall not be a part of the state's delegation in order to achieve the reduction of the state's delegation pursuant to this Rule 20. Any reduction of delegates under this provision shall be accomplished in a manner which complies with the requirement of proportional representation as provided for in Rule 13.

9. Except as provided by subsection (7) of this section C., the fact that a state party took provable, positive steps as provided in Rule 21 of these rules shall not preclude the state's delegation from being subject to the sanctions set forth in subsections (1), (2), (3), (4) and (5) of this section C.

D. Unresolved Challenges and Report to the Credentials Committee. The DNC Rules and Bylaws Committee shall report its activities, together with all challenges and complaints, to the Credentials Committee of the Democratic National Convention. In cases involving unresolved challenges which are appealed to the Credentials Committee, the burden of proof shall rest with the party presenting the challenge.

## 21. STATE LEGISLATIVE CHANGES

A. Subject to Rule 18.C. of these Rules, wherever any part of any section contained in these rules conflicts with existing state laws, the state party shall take provable positive steps to achieve legislative changes to bring the state law into compliance with the provisions of these rules.

## 2008 Delegate Selection Rules for the Democratic National Convention

B.  Provable positive steps shall be taken in a timely fashion and shall include: the drafting of corrective legislation; public endorsement by the state party of such legislation; efforts to educate the public on the need for such legislation; active support for the legislation by the state party lobbying state legislators, other public officials, Party officials and Party members; and encouraging consideration of the legislation by the appropriate legislative committees and bodies.

C.  A state party may be required by a vote of the DNC Executive Committee upon a recommendation of the DNC Rules and Bylaws Committee to adopt and implement an alternative Party-run delegate selection system which does not conflict with these rules, regardless of any provable positive steps the state may have taken.

# EXHIBIT B

## TENTATIVE 2008 Calendar of State Democratic Delegate Selection Dates*
### (With States Listed in Chronological Order)

| 1st DETERMINING STEP | STATE | | SYSTEM NOTES | 1st DETERMINING | STATE | | SYSTEM NOTES |
|---|---|---|---|---|---|---|---|
| 01/03/08 | Iowa | C | *Granted waiver to hold event on this date.* | | Nebraska | C | |
| 01/08/08 | New Hampshire | P | *Granted waiver to hold event on this date.* | | Virgin Islands | C | |
| 01/15/08 | Michigan | P | *Date of state primary; date violates rules; Non-Complia* | | Washington | C | |
| 01/19/08 | Nevada | C | *Allowed to go no more than 17 days before 2/5/08* | 02/10/08 | Maine | C | |
| 01/26/08 | South Carolina | P | *Granted waiver to hold event on this date.* | 02/12/08 | District of Columbia | P | |
| 01/29/08 | Florida | P | *Date of state primary; date violates rules; Non-Complia* | | Maryland | P | |
| 02/05/08 | Alabama | P | | | Virginia | P | |
| | Alaska | C | | 02/19/08 | Hawaii | C | |
| | American Samoa | CC | | | Wisconsin | P | |
| | Arizona | P | | 03/04/08 | Ohio | P | |
| | Arkansas | P | | | Rhode Island | P | |
| | California | P | | | Texas | PC | |
| | Colorado | C | | | Vermont | P | |
| | Connecticut | P | | 03/08/08 | Wyoming | C | |
| | Delaware | P | | 03/11/08 | Mississippi | P | |
| | Georgia | P | | 04/22/08 | Pennsylvania | P | |
| | Idaho | C | *Does not use state primary* | 05/03/08 | Guam | CC | |
| | Illinois | P | | 05/06/08 | Indiana | P | |
| | Kansas | C | | | North Carolina | P | |
| | Massachusetts | P | | 05/13/08 | West Virginia | P | |
| | Minnesota | C | | 05/20/08 | Kentucky | P | |
| | Missouri | P | | | Oregon | P | |
| | New Jersey | P | | 06/01/08 | Puerto Rico | P | *Date & System Change Must be Approved by RBC* |
| | New Mexico | PP | | 06/03/08 | Montana | P | |
| | New York | P | | | South Dakota | P | |
| | North Dakota | C | | | | | |
| | Oklahoma | P | | | | | |
| | Tennessee | P | | | | | |
| | Utah | P | | | | | |
| 02/05-2/12 | Democrats Abroad | PP | | | | | |
| 02/09/08 | Louisiana | P | | | | | |

* This calendar represents the **UNOFFICIAL** date and system currently anticipated or approved by each State Democratic Party for the 2008 delegate selection process and is **SUBJECT TO CHANGE. State selection dates and methods are subject to approval by the DNC's Rules and Bylaws Committee (RBC).** State Parties must hold nominating events inside the "window" (2/5/08 - 6/10/08) except as provided by the National Party's Rules. This unofficial calendar was prepared by the DNC's Office of Party Affairs and Delegate Selection. For more information, call 202/863-8046.

KEY TO SYSTEM TYPE: P = Primary; C = Caucus; PP = Party-run Primary; PC = Primary/Caucus; CC = Caucus/Convention.

# EXHIBIT C

# The Rules Of The Republican Party As adopted by the 2004 Republican National Convention August 30, 2004

## [EXCERPTS]

**RULE NO. 15**
**Election of Delegates and Alternate Delegates**

(a) Order of Precedence.

Delegates at large and their alternate delegates and delegates from congressional districts and their alternate delegates to the national convention shall be elected in the following manner:

(1) In accordance with any applicable Republican Party rules of a state, insofar as the same are not inconsistent with these rules; or,

(2) To the extent not provided for in the applicable Republican Party rules of a state, in accordance with any applicable laws of a state, insofar as the same are not inconsistent with these rules; or,

(3) By a combination of the methods set forth in paragraphs (a)(1) or (a)(2) of this rule; or,

(4) To the extent not provided by state law or party rules, as set forth in paragraph (c) of this rule.

(b) Timing

(1) Except with respect to delegates and alternate delegates elected under paragraph (c)(1)(ii) of this rule and if consistent with paragraph (d)(4) of this rule:

(i) No presidential primary, caucus, convention, or other meeting may be held for the purpose of voting for a presidential candidate and/or selecting delegates or alternate delegates to the national convention, prior to the first Tuesday of February in the year in which the national convention is held; and,

(ii) The selection process of choosing those who will select delegates or alternate delegates shall not begin before September 1 of the year before the year in which the national convention is to be held.

(c) General.

In all elections of delegates or alternate delegates to the national convention, the following rules shall apply:

(1) Delegates and alternate delegates to the national convention may be elected only in one of the following manners:

(i) by primary election;

(ii) by the Republican state committee, where specifically provided by state law;

(iii) by state and congressional district conventions;

(iv) by any method consistent with these rules by which delegates and alternate delegates were selected to the most recent Republican National Convention from that state;

(v) by Rule No. 13 (a)(2) of these rules.

(2) Only persons eligible to vote who are deemed as a matter of public record to be Republicans pursuant to state law or, if voters are not enrolled by party, by Republican party rules of a state, shall participate in any primary election held for the purpose of electing delegates or alternate delegates to the national convention or in any Republican caucus, mass meeting, or mass convention held for the purpose of selecting delegates to the county, district, or state conventions, and only such legal and qualified voters shall be elected as delegates to county, district, and state conventions; provided, however, that in addition to the qualifications provided herein, the applicable Republican party rules of a state may prescribe additional qualifications not inconsistent with law, which additional qualifications shall be adopted before the first Tuesday in September in the year before the year in which the national convention is to be held and published in at least one (1) newspaper having a general circulation throughout the state, such publication to be at least ninety (90) days before such qualifications become effective.

(3) No state law shall be observed which permits any person to participate in a primary delegate and alternate delegate selection process that also permits that person at the same primary to participate in the choosing of nominees of any other party for other elective office. Delegates and alternate delegates to the national convention shall in that event be selected pursuant to state party rules that are not inconsistent with the Rules of the Republican Party; provided, however, that the selection process established by the state party rules shall provide that only persons eligible to vote who are deemed to be Republicans pursuant to state law or state party rules shall participate in such delegate selection process.

(4) In any jurisdiction in which Republican representation upon the board of judges or inspectors of elections for primary elections is denied by law, delegates and alternate delegates shall be elected as provided in paragraph (a)(1) or (a)(4) of this rule.

(5) In selecting delegates and alternate delegates to the national convention, no state law shall be observed which hinders, abridges, or denies to any citizen of the United States, eligible under the Constitution of the United States to hold the office of President of the United States or Vice President of the United States, the right or privilege of being a

candidate under such state law for the nomination for President of the United States or Vice President of the United States or which authorizes the election of a number of delegates or alternate delegates from any state to the national convention different from that fixed in these rules.

(6) Alternate delegates shall be elected to the national convention for each unit of representation equal in number to the number of delegates elected therein and shall be chosen in the same manner and at the same time as the delegates and under the same rules; provided, however, that if the law of any state shall prescribe another method of choosing alternate delegates, they may be chosen in accordance with the provisions of the law of the state in which the election occurs, except that no alternates shall be selected for Republican National Committee members.

(7) Delegates and alternate delegates at large to the national convention when serving as delegates and alternate delegates shall be residents of and duly qualified voters in their respective states. All delegates and alternate delegates allocated as delegates and alternate delegates at large shall be elected at large in the several states; provided, however, that such allocation and method of election may be varied in any state to the extent, and only to the extent, necessary to avoid conflict with state law applicable to the selection of national convention delegates if such varying allocation and method of election were those pursuant to which delegates at large and alternate delegates at large were elected to the 1988 Republican National Convention from that state.

(8) Delegates and alternate delegates to the national convention representing congressional districts shall be residents of and qualified voters in said districts respectively when elected and when serving as delegates and alternate delegates. There shall be three (3) delegates and three (3) alternate delegates allocated to represent each congressional district of the several states, who shall be elected by each such congressional district; provided, however, that such number of delegates and alternate delegates allocated to represent, and elected by, any congressional district of a state may be reduced or increased to the extent, and only to the extent, necessary to avoid conflict with state law applicable to the selection of national convention delegates if such varying allocation was that pursuant to which district delegates and alternate district delegates were elected to the 1988 Republican National Convention from the state.

(9) No delegate or alternate delegate to the national convention shall be required to pay an assessment or fee in excess of that provided by the law of the state in which his or her election occurs as a condition of serving as a delegate or alternate delegate to the national convention.

(10) There shall be no automatic delegates to the national convention who serve by virtue of party position or elective office, except as provided for in Rule No. 13 (a)(2).

(11) No delegates or alternate delegates shall be selected pursuant to any Republican Party rule of a state or state law which materially changes the manner of selecting delegates or alternate delegates or the date upon which such state party holds a

presidential primary, caucus, convention, or meeting for the purpose of voting for a presidential candidate and/or selecting delegates to the national convention if such changes were adopted or made effective after the first Tuesday in September of the year before the year in which the national convention is to be held. Where it is not possible for a state party to certify the manner and the date upon which it holds a presidential primary, caucus, convention, or meeting for the purpose of voting for a presidential candidate and/or selecting delegates to the national convention in effect in that state on the date and in the manner provided in paragraph (e) of this rule, the process for holding the presidential primary, caucus, convention, or meeting for the purpose of voting for a presidential candidate and/or selecting delegates to the national convention shall be conducted in the same manner and held upon the same date as was used for the immediately preceding national convention. If it is not possible to hold a presidential primary, caucus, convention, or meeting for the purpose of voting for a presidential candidate and/or selecting delegates to the national convention upon the same date as was used for the immediately preceding national convention, then delegates or alternate delegates shall be selected by congressional district or state conventions pursuant to paragraph (d) of this rule.

(d) Conventions.

Wherever state law permits or the Republican Party rules of a state require the election of delegates and alternate delegates by convention or there is no applicable state law or Republican Party rule, delegates and alternate delegates to the national convention shall be elected by congressional district or state conventions pursuant to the following rules:

(1) Congressional district or state conventions shall be called by the Republican state committee.

(2) Delegates to congressional district conventions may be elected in precinct caucuses, mass meetings, mass conventions, or county conventions in which only eligible voters in such precinct, county, or district, as the case may be, shall vote.

(3) Notices of the call for any such caucus, meeting, or convention shall be published in a newspaper or newspapers of general circulation in the county, district, or state, as the case may be, not less than fifteen (l5) days prior to the date of such caucus, meeting, or convention.

(4) No delegates shall be deemed eligible to participate in any congressional district or state convention the purpose of which is to elect delegates to the national convention who are elected prior to the date of the issuance of the call of such national convention.

(5) Congressional district conventions shall be composed of delegates who are persons eligible to vote and who are deemed to be Republicans pursuant to state law or party rules. State conventions shall be composed of delegates who are persons eligible to vote and who are deemed to be Republicans pursuant to state law or party rules in the respective districts which they represent in said state conventions. Such delegates shall be

apportioned by the state Republican Party among counties, parishes, and cities of the state or district having regard to the Republican vote or the population therein.

(6) There shall be no proxies at any district or state convention (which shall not include meetings of a Republican state committee) held for the purpose of selecting delegates to the national convention. If alternate delegates to such selection convention are selected, the alternate delegate and no other shall vote in the absence of the delegate.

(e) Certification and filing by state committees.

(1) On or before the first Tuesday in September of the year before the year in which the national convention is to be held, each Republican state committee shall adopt rules, procedures, policies, and instructive materials (prepared pursuant to Rule No. 14(a)) governing the selection of delegates and alternate delegates to the national convention to convene during the following year and shall certify and file with the secretary of the Republican National Committee true copies of the same and of all statutes governing the selection of such delegates and alternate delegates.

(2) The Republican National Committee may grant a waiver to a state party from certain provisions of this rule in the following instance:

(i) Where it is not possible for a state party to comply with the first Tuesday in September deadline delineated in paragraph (e)(1) of this rule and not possible for a state party to hold its presidential primary, caucus, convention, or meeting for the purpose of voting for a presidential candidate and/or selecting delegates to the national convention as was used for the immediately preceding national convention or to select delegates or alternate delegates by congressional district or state conventions pursuant to paragraph (d) of this rule, and the Republican National Committee determines that granting such waiver is in the best interests of the Republican Party.

**RULE NO. 16**
**Enforcement of Rules**

(a) If any state or state party violates the Rules of the Republican Party relating to the timing of the selection process resulting in the election of delegates or alternate delegates to the next national convention, such state shall suffer a loss of its delegates and alternate delegates to that national convention as follows:

(1) If a state or state party violates the Rules of the Republican Party relating to the timing of the selection process resulting in the election of delegates or alternate delegates to the national convention before the call to the national convention is issued, then the number of delegates to the national convention from that state shall be reduced by fifty percent (50%), and the corresponding alternated delegates shall also be reduced.

(2) If a state or state party violates the Rules of the Republican Party relating to the timing of the selection process resulting in the election of delegates or alternate delegates

5

to the national convention after the call to the national convention is issued, then the number of delegates to the national convention from that state shall be reduced by ninety percent (90%), and the corresponding alternate delegates shall also be reduced.

(3) Any sum representing a fraction shall be increased to the nearest whole number, so long as such rounding does not prevent a state from having at least one (1) delegate or alternate delegate to the national convention.

(b) If a violation has occurred before the issuance of the call to the national convention, the chairman of the Republican National Committee shall notify the offending state of the violation and shall inform the state of the number of delegates and alternate delegates it will lose. This reduced number of delegates and alternate delegates will be reflected in the call to the national convention, and will be reported to the secretary of state or responsible election official of the offending state and to the chairman of every state party. Said reduced number will be the only number recognized as the official delegation of the state to the national convention.

(c) If a violation has occurred after the issuance of the call to the national convention, the chairman of the Republican National Committee shall notify the state of the violation and shall inform the state of the number of delegates and alternate delegates it will lose. This reduced number of delegates and alternate delegates will be reported to the secretary of state or responsible election official of the offending state and to the chairman of every state party, and such reduced number will be the only number recognized as the official delegation of the state to the national convention.

(d) If the chairman of the Republican National Committee does not act upon a violation of the Rules of the Republican Party relating to the selection and/or allocation of delegates or alternate delegates to the national convention, then a statement may be filed against a state or state party by any three (3) members of the Republican National Committee Standing Committee on Rules who feel that a violation has occurred.

(1) A statement filed against a state or state party by any three (3) members of the Standing Committee on Rules shall be written and shall specify the reasons why the members believe the state or state party is in violation. The statement shall be signed and dated by each Rules member filing the statement, and shall be filed with the secretary of the Republican National Committee. The secretary of the Republican National Committee shall, within twenty (20) days of receipt, distribute such statement to all members of the Republican National Committee.

(2) The Standing Committee on Rules shall meet upon the call of the chairman of the Rules Committee, and shall vote upon whether a state or state party is in violation. If by majority vote the Standing Committee on Rules finds a violation, then such state or state party shall suffer the penalties described in paragraph (a) of this rule.

(e) If a state or state party is determined to be in violation:

6

(1) No member of the Republican National Committee from the offending state shall be permitted to serve as a delegate or alternate delegate to the national convention.

(2) After the Republican National Committee members are excluded from being part of the offending state's delegation to the national convention, the state party shall determine which of the state's remaining delegates (and corresponding alternate delegates) are entitled to serve as part of the state's reduced delegation to the national convention.

(3) In addition to the penalties provided for in paragraphs (e)(1) and (2) of this rule, the Republican National Committee Standing Committee on Rules may impose additional sanctions relating to the offending state's hotel location at the national convention, guest privileges and VIP passes at the national convention, and seating location in the national convention hall.

(f) A state or state party shall have no appeal from either a finding of a violation against it or a penalty imposed upon it under this rule.

RULE NO. 17

# EXHIBIT D

From the DNC Press Office ★
DNC Democratic News

For Immediate Release
April 2, 2008

Contacts:   (DNC) Karen Finney/Stacie Paxton - 202.863.8148
            (Florida Democratic Party) Mark Bubriski or Alejandro Miyar --850.222.3411

## Joint Statement from DNC Chairman Howard Dean, Florida Democratic Chairwoman Karen L. Thurman and the Florida Congressional Delegation on Seating Florida's Delegates

**Washington, DC** - After a joint meeting today among Democratic National Committee Chairman Howard Dean, Florida Democratic Chairwoman Karen L. Thurman and the Florida Congressional Delegation, the participants issued this joint statement:

"We are all committed to doing everything we can to ensure that a Florida delegation is seated in Denver.  We all agree that whatever the solution, it must have the support of both campaigns.  While there may be differences of opinion in how we get there, we are all committed to ensuring that Florida's delegation is seated in Denver.  We're committed to working with both campaigns to reach a solution as soon as realistically possible.  We are also laying the groundwork to ensure we win in Florida in November and spent time here today talking about how to do just that.  We will continue to work towards a solution to ensure delegates are seated and logistics are in place for a Florida delegation in Denver."

### #

Paid for and authorized by the Democratic National Committee, www.democrats.org.
This communication is not authorized by any candidate or candidate's committee.

4/30/2008