**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


Victor DiMaio, an individual                    CASE NO: 8:08-CV-672-T-26EAJ

      Plaintiff,

v.

Democratic National Committee

      Defendant,

_____/


**<u>RESPONSE AND MEMORANDUM IN OPPOSITION</u>**
**<u>TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW the Plaintiff, by and through his undersigned attorney, and files this his Response and Memorandum in Opposition to Defendant's Motion form Summary Judgment, and says:

The Defendant appears to be asserting that it has the absolute right to set forth in its rules the schedule in which states or territories may hold primaries or caucuses in order for those states or territories to have delegates seated at its national nominating convention, even if the schedule takes into consideration race and national origin demographics of a state or territory as the manifest reason for placing certain states early in the primary schedule.

The Plaintiff posits that while generally a national political party has the right to determine the manner in which delegates are seated to serve at its nominating convention, that right is limited, in that it may not discriminate against an individual on the basis of race or national origin.  The Plaintiff further posits that giving the citizens of a state or

territory the right to have a presidential preference primary before the citizens of another state or territory and the manifest reason for doing so was based on the race or national origin demographics of the former state or territory, violates the Equal Protection Rights and rights under the Civil Rights Act of the citizens of the latter state or territory.

## **Fourteenth Amendment Claim**

In determining whether a party has a cause of action against another party for violation of the equal protection clause of the fourteenth amendment, the party claiming the violations must show:

1.      He has standing.

2.      The second party's action constitutes state action.

3.      The alleged offending party treated the Plaintiff differently than others similarly situated.  Under Supreme Court precedence, if the disparity in treatment is due to race or national origin, the action is constitutional suspect.

The Defendant suggests that its rules and by laws committee is the appropriate forum for resolving disputes regarding seating of delegates.  While this may be true with respect to interpreting the DNC's scheduling rules and delegate selection rules, they are not the arbiter of whether those rules violate the United States Constitution or federal law.  The Defendant asserts that the Supreme Court has recognized that the convention itself is the appropriate form for resolving the issue of whether scheduling rules are unconstitutional or violate federal law, however, the Defendant has no authority for that position and that position is plainly wrong.

In order to establish standing Plaintiff must show that he was treated differently by the "state actor" than other persons similarly situated and that as a result he was

harmed.  The Plaintiff posits that it is not necessary that the discrimination be directed toward him.  It is only necessary that he is being treated differently than others similarly situated.  The action is constitutionally suspect if the basis for the different treatment was due to race or national origin.  The Plaintiff further posits that for fourteenth amendment purposes, it is irrelevant whether the basis for the discrimination is the race or national origin of an individual person or the racial or national origin demographics of a state, territory or other geographical location.  To hold otherwise would allow a state actor to subvert the intent of the fourteenth amendment by allowing discrimination based on racial or national origin demographics.

The Plaintiff has also established an injury in fact.  While the citizens of the State of Florida would have been able to vote and have their votes counted towards the seating of delegates, had they waited until February 5, 2008, just as the other states and territories waited, the Defendant could have scheduled its primaries and caucuses without making race and national origin demographics the manifest basis for scheduling the first primaries and caucuses.  The Defendant violated the constitution and the Civil Rights Act in adopting its scheduling rules and therefore the State of Florida was not bound to follow those unlawful rules.  At a minimum, Florida was entitled to schedule its primary during the same time frame as South Carolina and Nevada and may not be penalized for doing so.  The Plaintiff was harmed because his vote was not counted toward the selection of delegates to be seated at the Democratic Nominating Convention.  Since the majority of delegates that would be seated from Florida are pledged delegates, Plaintiff's vote not only affects which individual delegates may be seated, but also the party's nominee for president.

With respect to the issued of whether the action of the Defendant is "state action", the Plaintiff has set forth his position in his Motion for Summary Judgment and posits that this issue has been adequately briefed.

### Civil Rights Act Claim

The Plaintiff posits that, if under any circumstances, basing the primary schedule on racial or national origin demographics violates the civil rights act, the Defendant's motion must fail.

In its Motion for Summary Judgment the Defendant failed to address the scenario described by Plaintiff in his Motion for Summary Judgment to wit:

The Democratic National Committee determines that its chances of electing a Democratic president is best if a white Anglo-American is nominated as the presidential candidate and the most effective manner in achieving that goal is to schedule primaries and caucuses wherein states with a significantly larger Anglo-American population are permitted to conduct their primaries and caucuses prior to the primaries and caucuses of the remaining states and territories.  If the Defendant would violates the Civil Rights Act under this scenario, then it would also violate the Civil Rights Act under the facts of this case.  It is irrelevant whether the Defendant believes its actions are benign and for the purposes of achieving "diversity" or malicious, for he purposes of reducing the chances of a minority being selected as the Democratic nominee for president.

An analogy may be made to cases involving racial gerrymandering of Congressional districts.

In the case of Shaw, et al v. Hunt, 517 US, 899 (U.S. 1996) the court held that the North Carolina Congressional districting plan violated the Equal Protection clause of the

United States Constitution because the states reapportionment scheme was not narrowly tailored to serve a compelling state interest.  The court stated "strict scrutiny applies when race is the predominant consideration in drawing district lines such that the legislature subordinates race neutral districting principles to race considerations."  In that case the court held there were no compelling interests to sustain the Congressional district.  Eradicating the effects of past discrimination did not precipitate the use of race in the districting plan.  Furthermore, the District, as drawn, was not narrowly tailored to avoid liability under § 2 of the Voting Rights Act, which prohibits dilution of the voting strength of members of a minority group.

In Miller v. Johnson, 515 US 900, 909 (1995) the Court explained that a racially gerrymandered districting scheme, like all laws that classify citizens on the basis of race, is constitutionally suspect.  This is true whether or not the reasons for the racial classification is benign or the purpose remedial.  The Court went on to state that a legislature may be conscious of the voters' races without using race as a basis for assigning voters to districts.  The constitutional wrong occurs when race becomes the dominant and controlling consideration.   As in the Shaw v. Hunt case, the state was concerned that failure to enact a plan with a second majority black district would have left the state vulnerable to a lawsuit under the Voting Rights Act.  However, the facts did not support this.  Nonetheless, the Court stated that even if avoidance of §2 liability is a compelling state interest, the legislative action must be "narrowly tailored".

With racially motivated gerrymandering, it is not permissible to draw districts in such a way so as to make it very unlikely that a black person could get elected, but

likewise, the districts cannot be intentionally drawn in a distorted fashion to ensure a black person gets elected.

The case herein involves very unique circumstances and is one of first impression.

The Court must first determine the law and then apply the law to the facts. The questions to be answered are as follows:

1. Is a political party subject to the Civil Rights Act of 1964?

2. Did the Defendant, in setting out its primary schedule treat the voters of the state of Florida differently than the voters of the states of South Carolina and Nevada?

3. Was the predominant reason, considering all the material alluded to in the Complaint and Motions, that South Carolina and Nevada were selected to vote before the remaining states and territories, based on racial demographics of those states.

4. Was there a compelling "state" or party interest to ensure that African Americans, as a group or constituency, and Hispanic/Latino voters, have a significant voice in the selection of the Defendant's nominee for president?

5. Could the party's rules have been narrowly tailored so as not to use race or national origin as the predominant reason for causing certain states to be scheduled in an earlier tier of the Presidential Preference Primary and caucuses process?

6. Has Plaintiff been harmed by Florida delegates not being seated at the Democratic Nominating Convention?

The Defendant's discussion about how Florida violated the Democratic National Committee rules, about negotiations to seat delegates, and Florida's opportunity to challenge the party's decision, is irrelevant and not material to the issues before this Court.

If the rules of the Defendant are unconstitutional or violate the Civil Rights Act, the state of Florida does not have to comply with those rules and if Florida chooses to hold a primary election during the same time period as South Carolina or Nevada, the results of those votes should be counted the same was as the results in those states.

Finally, Plaintiff must have standing to sue under the Civil Rights Act.

The Defendant does not appear to argue that it is not subject to the Civil Rights Act of 1964, in that it is a recipient of federal financial assistance.  It appears to be arguing that the Plaintiff does not have standing to bring an action under the Civil Rights Act.

The purpose of Title VI of the Civil Rights Act is to ensure that public funds are not spent in a way that encourages, subsidizes, or results in racial discrimination.

In its motion the Defendant cites the case of Freedom Republican v. FEC, 13 F. 3d 412 (D.C. Cir. 1994) in support of its position that Plaintiff does not have standing. This case is not at all in point with respect to the issue of standing.  In that case, the court noted that the Plaintiff's could not show a causal connection between the asserted injury and the challenged conduct, such that the injury is fairly traceable to the challenged conduct and not the result of independent action by a third party not before the court. They also stated that there is little likelihood the injury would be redressed by a favorable decision on the merits.

The court in that case explained that the Plaintiff brought an action against the FEC rather than the Republican Party.  They stated that to take away the funding from the Republican Party would not redress the violation.

In this case, however, ordering the Defendant to seat all of the delegates elected by the state of Florida at the Defendant's national nominating convention, despite the fact that Florida violated the scheduling rules of the Defendant, because the Defendant based its earlier tier schedule predominantly due to the racial and national origin demographics of the states of South Carolina and Nevada, would certainly result in the Defendant changing its rules so that in the future it did not engage in conduct in violation of the Civil Rights Act.

In its motion, the Defendant attempted to address the correct issue in this case when it asserted that its process was based not only on racial and ethnic diversity, but economic and geographic diversity as well.  This is the key issue in this case.  The question to be answered is whether race and national origin demographics were one of many factors in the scheduling of Nevada and South Carolina in the earlier tier of the primary process, or was it the dominant factor.  As the Supreme Court stated in the case of <u>Gratz v. Bollinger</u>, 539 US 244, (2003), in order to violate the Fourteenth Amendment and the Civil Rights Act, race and national origin need not be the only factor, but it must be dominant.

In its motion the Defendant cited the case of <u>Wymbs v. Republican State Executive Committee of Florida</u>, 719 F.2d 1072, (11th Cir. 1983).   This case is also not on point.   <u>Wymbs</u> dealt with a disagreement over the proper method for delegates selection and the dispute was between different groups in the Florida Republican party. It had nothing to do with claims of race or national origin discrimination.  Plaintiff posits that <u>Wymbs</u> would have been decided differently if the assignment of delegates from each Congressional district was based on the racial or national origin demographics of

that district.  In <u>Wymbs</u> the Plaintiffs were asking the court to apportion delegates based on the number of Republicans in each district.  The court stated it would be difficult if not impossible to determine how to reapportion Florida's delegate districts.

  For the foregoing reasons the Plaintiff would assert that the Defendant's Motion for Summary Judgment should be denied.

       Respectfully Submitted

,

       <u>s/ Michael A. Steinberg</u>
       Michael A. Steinberg, Esquire
       4925 Independence Parkway, Suite 195
       Tampa, Florida 33602
       Telephone #: (813) 221-1300
       Facsimile  #: (813) 221-1702
       Frosty28@aol.com
       Attorney for the Plaintiff
       Florida Bar No:  340065

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on May 13, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel for Defendant, Katherine E. Giddlings, Akerman Senterfitt, 106 East College Avenue, Suite 1200, Tallahassee, FL 32301 and counsel, Joseph E. Sandler, Sandler, Reiff & Young, P.C., 50 E. Street, S.E., Suite 300, Washington, DC 20003.

s/ Michael A. Steinberg
Michael A. Steinberg, Esquire
4925 Independence Parkway, Suite 195
Tampa, Florida 33634
Telephone #: (813) 221-1300
Facsimile  #: (813) 221-1702
Frosty28@aol.com
Attorney for the Plaintiff
Florida Bar No:  340065